J-S18028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SEAN SIMMONS, | |
| Appellant | No. 1740 EDA 2014 |

Appeal from the Judgment of Sentence entered May 8, 2014,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0008336-2009

BEFORE:  BENDER, P.J.E., ALLEN and MUNDY, JJ.

MEMORANDUM BY ALLEN, J.:                          **FILED MARCH 23, 2015**

Sean Simmons ("Appellant") appeals from the judgment of sentence imposed following the trial court's revocation of his probation.  We affirm.

The trial court summarized the pertinent factual and procedural history as follows:

> On September 25, 2009, Appellant was sentenced to 3 years probation by the Honorable Roger Gordon after pleading guilty to criminal trespass (18 Pa.C.S.A. § 3503(A)(1)(ii)) as a second degree felony.  Appellant's probation was to be supervised by the mental health unit of the probation department.  On October 18, 2010, [A]ppellant was arrested and charged with aggravated assault (18 Pa.C.S.A. § 2702), as a felony of the first degree, [a] potential direct violation of Judge Gordon's probation.  A violation hearing was scheduled before Judge Gordon but had to be continued several times pending resolution of [A]ppellant's open bills.  On December 14, 2011, Judge Gordon ordered a pre-sentence investigation report, in the event it would be needed for sentencing, and continued the hearing for a status of [A]ppellant's mental health.  Thereafter, Judge Gordon relinquished jurisdiction,

the matter was transferred and [A]ppellant was formally accepted into Mental Health Court (MHC). Both the potential direct violation of Judge Gordon's probation and the new conviction were consolidated before [the Honorable Judge Sheila Woods Skipper]. On May 3, 2012, [A]ppellant pleaded *nolo contendere* to the aggravated assault and was sentenced to 11½ - 23 months confinement followed by 15 years probation (CP-51-CR-0015449-2010). He was also sentenced to 11½ - 23 months confinement followed by 5 years probation, to run concurrently, for the direct violation of Judge Gordon's probation (CP-51-CR-0008336-2009). Appellant was to be paroled to a treatment facility upon bed availability and ordered to comply with treatment and all the conditions of his sentence.

As is the procedure in MHC, [A]ppellant was scheduled for status of mental health and treatment hearings at regular intervals to monitor his compliance and progress. At [A]ppellant's July 19, 2012 status hearing, [A]ppellant's probation officer reported that [A]ppellant was paroled to Eagleville Hospital on July 12, 2012, and was in compliance with his treatment program. Appellant was reported in compliance at the August 9, 2012 hearing. However, on August 28, 2012, [A]ppellant's probation officer issued wanted cards after receiving a report that [A]ppellant absconded from the treatment program on August 20, 2012, and did not contact his probation officer. At the September 27, 2012 hearing the bench warrant was lifted, and [A]ppellant was scheduled for a FIR evaluation the following day, which he did attend. Appellant was reported to be in compliance again at the October 18, 2012 status hearing. But on November 26, 2012, a probation violation warrant was again issued after [A]ppellant failed to report to probation as scheduled. At the December 6, 2012 status hearing, [A]ppellant was taken into custody from the courtroom and a violation hearing was scheduled. ... [A] violation hearing was scheduled for January 24, 2013 [following which,] despite [A]ppellant's technical violations, [A]ppellant's probation/parole was continued and he was directed to re-enroll in treatment and report to his probation officer as scheduled. Appellant was reported to be in compliance with the conditions of his probation at the January 31,

2013, March 14, 2013, May 16, 2013, June 20, 2013 and August 15, 2013 [status conference] listings.

On September 27, 2013, [A]ppellant's probation officer issued a probation warrant after it was determined that [A]ppellant was apprehended on September 30, 2013. At the October 17, 2013 status hearing, [A]ppellant's probation officer reported that [A]ppellant had tested positive for drugs. Appellant remained in custody until the November 14, 2013 violation hearing. Following the hearing, [A]ppellant was found in violation of his probation/parole due to the technical violations and, in lieu of a new sentence, the [trial court] considered [A]ppellant's time spent in custody as his sanction. At the December 12, 2013 listing, [A]ppellant was once again reported to be in compliance with the conditions of his treatment, however he failed to appear for the hearing, ... and a bench warrant *nunc pro tunc* was issued. Appellant did appear for the February 28, 2014 listing. His probation officer reported that he was once again not in compliance with his treatment program and a violation hearing was scheduled for May 8, 2014. At the hearing, [A]ppellant's probation officer testified that [A]ppellant was not reporting as scheduled to the probation department and she received information that [A]ppellant had not been to his treatment program since March 11, 2014. When she spoke with [A]ppellant, he falsely assured her that he was back in the program. However, when she contacted Wedge Franklin she learned that [A]ppellant was not attending and had been discharged from the program on April 11, 2014. Appellant also tested positive for marijuana.

Trial Court Opinion, 8/21/14, at 1-4 (footnotes omitted).

At the conclusion of the May 8, 2014 hearing, the trial court found Appellant in technical violation of his probation and re-sentenced him to three (3) – six (6) years of incarceration. Appellant filed a motion for reconsideration on May 16, 2014, which the trial court denied on June 3,

2014.  This appeal followed.  Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

> Did not the [trial court] abuse its discretion and impose a sentence that was manifestly excessive where it failed to order, consider, or state its reasons for dispensing with a pre-sentence investigation report in violation of the Rules of Criminal Procedure, Rule 702(A)(2), and where it sentenced [A]ppellant to total confinement absent his having been convicted of a new crime, absent any indication that he was likely to commit a new crime, and absent a need to vindicate the authority of the court, in violation of the requirements of 42 Pa.C.S.A. § 9771(c)?

Appellant's Brief at 3.

Appellant asserts that at the sentencing hearing, the trial court failed to order a pre-sentence investigation report, and failed to provide reasons on the record for its decision not to order the report, thereby abusing its sentencing discretion.  Appellant's Brief at 11-15.

Appellant's challenge to the discretionary aspects of his sentence is not appealable as of right.  Rather, Appellant must petition for allowance of appeal pursuant to 42 Pa.C.S.A. § 9781.  **Commonwealth v. Hanson**, 856 A.2d 1254, 1257 (Pa. Super. 2004).

> Before we reach the merits of this [issue], we must engage in a four part analysis to determine:  (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.  The third and fourth of these requirements arise because Appellant's attack on his sentence is not an appeal as of right.  Rather, he must petition

- 4 -

this Court, in his concise statement of reasons, to grant consideration of his appeal on the grounds that there is a substantial question. Finally, if the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013) (citations omitted); *see also Commonwealth v. Kalichak*, 943 A.2d 285, 289 (Pa. Super. 2008) ("[W]hen a court revokes probation and imposes a new sentence, a criminal defendant needs to preserve challenges to the discretionary aspects of that new sentence either by objecting during the revocation sentencing or by filing a post-sentence motion").

Here, Appellant preserved his claim in his motion for reconsideration, and filed a timely notice of appeal. Appellant has additionally included in his brief a concise statement pursuant to Pa.R.A.P. 2119(f). *See* Appellant's Brief at 6-8. Moreover, Appellant's claim that the trial court failed to order a pre-sentence investigation report, or provide reasons for its failure to do so, raises a substantial question for our review. *See Commonwealth v. Flowers*, 950 A.2d 330, 332 (Pa. Super. 2008).

In *Commonwealth v. Pasture* --- A.3d ----, 2014 WL 7392242 (Pa. 2014), our Supreme Court recently reiterated the "broad discretion and deferential standard of appellate review" we afford to a trial court when presented with a challenge to the discretionary aspects of a sentence. The High Court in *Pasture* emphasized that "the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are

difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed." ***Pasture*** at 5 (citations omitted). With particular regard to probation revocation proceedings, the Supreme Court explained:

> The sentencing court's institutional advantage is, perhaps, more pronounced in fashioning a sentence following the revocation of probation, which is qualitatively different than an initial sentencing proceeding. At initial sentencing, all of the rules and procedures designed to inform the court and to cabin its discretionary sentencing authority properly are involved and play a crucial role. However, it is a different matter when a defendant reappears before the court for sentencing proceedings following a violation of the mercy bestowed upon him in the form of a probationary sentence. For example, in such a case, contrary to when an initial sentence is imposed, the Sentencing Guidelines do not apply, and the revocation court is not cabined by Section 9721(b)'s requirement that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721.

> Upon revoking probation, "the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation." 42 Pa.C.S. § 9771(b). Thus, upon revoking probation, the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence, although once probation has been revoked, the court shall not impose a sentence of total confinement unless it finds that:

> (1)    the defendant has been convicted of another crime; or

(2)    the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3)    such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S. § 9771(c).

Moreover, 42 Pa.C.S. § 9721(b) specifies that in every case following the revocation of probation, "the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *See also* Pa.R.Crim.P. 708(C)(2) (indicating at the time of sentence following the revocation of probation, "[t]he judge shall state on the record the reasons for the sentence imposed.").

However, following revocation, a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statutes in question. Simply put, since the defendant has previously appeared before the sentencing court, the stated reasons for a revocation sentence need not be as elaborate as that which is required at initial sentencing.   The rationale for this is obvious.   When sentencing is a consequence of the revocation of probation, the trial judge is already fully informed as to the facts and circumstances of both the crime and the nature of the defendant, particularly where, as here, the trial judge had the benefit of a [pre-sentence investigation report] during the initial sentencing proceedings.   ... [T]here is no absolute requirement that a trial judge, who has already given the defendant one sentencing break after having the benefit of a full record, including a [pre-sentence investigation report], must order another [pre-sentence investigation report] before fashioning the appropriate revocation sentence.

\*\*\*

In point of fact, where the revocation sentence was adequately considered and sufficiently explained on the record by the revocation judge, in light of the judge's experience with the defendant and awareness of the circumstances of the probation violation, under the appropriate deferential standard of review, the sentence, if within the statutory bounds, is peculiarly within the judge's discretion.

***Pasture*** at 6 (citations omitted).

Here, our review of the record confirms that the trial court was very familiar with Appellant, having presided over numerous proceedings in this matter. The record reflects that on May 3, 2012, the trial court conducted a probation revocation hearing, at which Appellant was found in violation of his probation and re-sentenced. Thereafter, the trial court repeatedly reviewed Appellant's progress at numerous treatment "status of mental health" conferences, at which the trial court reviewed Appellant's compliance with his treatment program. ***See e.g.,*** Trial Court Orders, 7/19/12; 10/18/12; 12/06/12; 1/24/13 (finding Appellant competent and ordering him to report to probation and re-enroll in treatment); 1/31/13 (finding Appellant in compliance with his program); 3/14/13; 5/16/13 (finding Appellant in compliance with his program). Thus, the trial court in the years preceding the revocation proceeding at issue in this appeal, regularly reviewed Appellant's progress, and was quite familiar with Appellant and the facts and circumstances of his case.

Moreover, at the revocation hearing on May 8, 2014, the trial court heard a detailed account of Appellant's progress from Appellant's probation officer, Keisha Adams. N.T., 5/8/14, at 3. Ms. Adams recounted Appellant's irregular reporting history, his family circumstances, his lack of compliance with his treatment program, his submission of false urine samples, Ms. Adams' efforts to communicate with Appellant about his lack of compliance,

and Appellant's failure to respond to Ms. Adams' requests. *Id*. at 3-5. The trial court additionally heard from Appellant, who stated that he was "back in treatment." *Id*. at 6.

As the trial court explained:

Appellant's sentence of 3-6 years is well below the maximum. … [A]ppellant's behavior demonstrated to the Court that he had not benefitted from probation and the services provided during his probation, and was likely to re-offend. After numerous technical violations and failures to comply with the conditions of his sentence and MHC, it was obvious that [A]ppellant had no intention of conforming his behavior. Moreover, [A]ppellant's sentence was necessary to vindicate the authority of the Court since [A]ppellant failed to comply with the conditions of his sentence despite the Court giving him several informal sanctions before violating him a second time.

* * *

The record demonstrates that, having supervised [A]ppellant since May 2012, as a participant in Mental Health Court, the [trial court] was in possession of several reports and evaluations from psychiatrists, [A]ppellant's social workers and case managers, treatment facility staff, and probation officers, and possessed more than sufficient information to enable it to make a determination of the circumstances of [A]ppellant's offense and [A]ppellant's character, and give individualized consideration to [A]ppellant's needs at sentencing. Prior to sentencing [A]ppellant, the [trial court] noted that while [A]ppellant did have some periods of compliance, there were also several instances where he had failed to report to his probation officer, had been sanctioned for non-compliance and had submitted positive drug screens. In addition, the [trial court] noted that this was [A]ppellant's second violation hearing before the [trial court]. Therefore, the [trial court] had sufficient information to substitute for the [pre-sentence investigation report] when fashioning an individualized sentence for [A]ppellant and this claim fails.

Trial Court Opinion, 8/21/14 at 6-8 (citation to notes of testimony omitted).

We agree with the trial court that in the absence of a pre-sentence investigation report, the trial court was sufficiently informed of the relevant facts and circumstances to enable it to "fashion the appropriate revocation sentence." ***Pasture, supra***. Appellant's claim to the contrary lacks merit.

To the extent Appellant argues that the trial court sentenced him to total confinement based on his technical violations, and without considering the applicable statutory factors set forth in 42 Pa.C.S.A. § 9771(c), this claim also lacks merit.[1] "Technical violations can support revocation and a sentence of incarceration when such violations are flagrant and indicate an inability to reform." ***Carver***, 923 A.2d at 498. As the trial court correctly concluded, numerous attempts to rehabilitate Appellant had not only failed, but led to a continuation of noncompliant behavior, with Appellant incurring "escalating … infractions", indicating that he "had not taken his supervision seriously, and that [A]ppellant had the ability to make good decisions but chose to do otherwise[.]" Trial Court Opinion, 8/21/14, at 9. Appellant failed to comply with his court-ordered mental health treatment, provided false urine samples to his probation officer, tested positive for marijuana, repeatedly failed to meet with his probation officer, and provided her with false information about his participation in the treatment program. Upon

---

[1] "[A] claim that a particular probation revocation sentence is excessive in light of its underlying technical violations can present a question that we should review." ***Commonwealth v. Carver***, 923 A.2d 495, 497 (Pa. Super. 2007).

review, we find no abuse of discretion in the trial court's determination that Appellant's sentence of incarceration was appropriate to vindicate the authority of the court. *See* Trial Court Opinion, 8/21/14, at 6. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/2015