J-S16042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHARLES F. NEALMAN, JR. | |
| Appellant | No. 1413 MDA 2014 |

Appeal from the Judgment of Sentence July 30, 2007
In the Court of Common Pleas of Mifflin County
Criminal Division at No(s): CP-44-CR-0000561-2006

BEFORE:  PANELLA, J., OLSON, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED MAY 26, 2015**

Charles F. Nealman, Jr. appeals *nunc pro tunc* from the judgment of sentence imposed July 30, 2007, in the Mifflin County Court of Common Pleas.  Nealman was sentenced to an aggregate term of 12 to 35 years' imprisonment following his jury conviction of rape[1] and related crimes for the sexual assault of his ex-girlfriend.  On appeal, he challenges only the discretionary aspects of his sentence.  For the reasons set forth below, we affirm.

The facts underlying Nealman's conviction are as follows.  Nealman and the victim were involved in a relationship while both were married to other people.  In March of 2006, they left their respective spouses and

_____

[1] 18 Pa.C.S. § 3121(a)(1).

moved into an apartment the victim was renting. Soon thereafter, the victim suspected Nealman was having an affair, and the relationship soured. On August 1, 2006, they both decided Nealman would move out of the apartment.[2] However, he planned to return the next day and install an air conditioner before the victim got home from work.

On August 2, 2006, the victim got home around 2:30 p.m. She spoke with Nealman on the phone and they argued again about his suspected affair. Nealman told the victim that he wanted to come over and explain the misunderstanding, but the victim told him not to come. While they were still on the phone, the victim noticed her car, which Nealman had been driving, in the driveway. She then heard a "large bang," after which Nealman appeared in the kitchen.[3] *Id.* at 63.

Nealman tried to explain to the victim that her suspicions were incorrect, and said that "he wasn't leaving until [she] had sex with him." *Id.* at 64. Although the argument escalated, the victim initially believed Nealman was "just blowing smoke." *Id.* at 65. However, when the victim

_____

[2] Nealman no longer had a key to the apartment because he had given his key to his brother, who lived with him and victim for a short time in June of 2006. Nealman testified he never had another key made because there was usually someone home when he returned from work. N.T., 5/17/2007, at 165. If no one was home, he would climb the low roof in the back of the house onto a balcony and enter through an unlocked door off the balcony. *Id.* at 166.

[3] Nealman had entered the apartment through the balcony door.

went to the kitchen to refill her glass of iced tea, Nealman knocked it out of her hand and the glass splattered everywhere. The victim testified that she "started crying because that's when [she] knew [she] was in trouble." *Id.*

Over the next several hours, Nealman (1) punched the front door; (2) threatened to hit the victim over the head with a glass; (3) threatened to "shove[]" a candle lighter down the victim's throat;[4] (4) held a butcher knife to the victim's throat while stating, "Do you know how easy it would be for me to slit your throat right now?"[5] (5) smashed a large metal flashlight into the bedroom wall to threaten her to have sex with him; and (6) forced the victim to engage in oral and vaginal sex in the bedroom and living room.[6] Eventually, Nealman led the victim outside toward his car that was broken down on a nearby street, and directed her to fix it.[7] When she responded "no," he said, "Get out of here, bitch. You ain't worth it" and he walked

_____

[4] N.T., 5/17/2007, at 68.

[5] *Id.* at 69.

[6] While he was threatening the victim, Nealman brought up an incident that had occurred a few months earlier when he almost killed the boyfriend of victim's stepdaughter. He told the victim to call their mutual friend, Nick Heimbach, and ask Heimbach if he believed Nealman could have killed the boy. The victim did so, and Heimbach answered "Yes, I think he [was] capable of killing him." *Id.* at 74.

[7] The victim had damaged the exhaust on Nealman's vehicle earlier that day. *Id.* at 60.

away.  ***Id.*** at 80.  The victim then ran to a nearby house and called the police.

Nealman was arrested and charged with rape, kidnapping, aggravated assault, burglary, involuntary deviate sexual intercourse ("IDSI"), sexual assault, aggravated indecent assault, unlawful restraint, recklessly endangering another person ("REAP") and terroristic threats.[8]  The case proceeded to a jury trial, and, on May 17, 2007, a jury found him guilty of all charges, except kidnapping and burglary.  The trial court ordered a presentence investigation report, and directed that Nealman be assessed by the Sexual Offenders Assessment Board ("SOAB") to determine whether he met the criteria for classification as a sexually violent predator under Megan's Law.[9]

On July 26, 2007, Nealman was sentenced to a term of five to 15 years' imprisonment for rape, a consecutive term of five to 15 years' imprisonment for IDSI, and a consecutive term of two to five years' imprisonment for aggravated assault, for an aggregate term of 12 to 35

_____

[8] 18 Pa.C.S. §§ 3121(a)(1); 2901(a)(3); 2702(a)(i); 3502(a); 3123(a)(2); 3124.1; 3125(a)(3); 2902(a)(1); 2705; and 2706(a)(1), respectively.

[9] The Sexual Offenders Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10-9799.14, replaced Pennsylvania's Megan's Law effective December 20, 2012.

years' imprisonment.[10]  Based upon the SOAB assessment, the trial court determined that Nealman did not meet the criteria for classification as a sexually violent predator.  Nealman filed a *pro se* motion to modify his sentence,[11] and the trial court entered an amended sentencing order on September 11, 2007.[12]  Thereafter, counsel filed an amended motion for post-sentence relief, again challenging the trial court's sentence.[13]  The court conducted a hearing, and, on January 9, 2008, entered an order denying the amended motion for reconsideration.  Nealman filed a timely *pro se* notice of appeal.  However, on June 26, 2008, this Court dismissed the appeal when Nealman failed to file an appellate brief.

_____

[10] Nealman's convictions of sexual assault and aggravated indecent assault merged with his convictions of rape and IDSI for sentencing purposes.  On each of the remaining convictions, the court assessed only a $300 fine.

[11] Nealman argued (1) the trial court failed to consider the sentencing guidelines, (2) the court failed to provde adequate reasons on the record for deviating from the guidelines; (3) the sentence was excessive; and (4) the court failed to give "appropriate weight to [his] circumstances[.]"  Motion to Modify and Reduce Sentence, 8/2/2007, at 1.  He also requested the court run his sentences concurrently.

[12] The only change in the amended sentencing order was the trial court awarded Nealman more credit for time-served.  **Compare** Order, 7/26/2007, at 1 (credit of 152 days for time-served), with Order, 9/11/2007, at 1 (credit of 222 days for time-served).

[13] Specifically, counsel incorporated by reference Nealman's prior *pro se* motion, and reiterated the same claims he made in that motion.  Counsel also asserted the trial court's reliance on "the statements of the victim, was an impermissible basis for deviation from the guidelines."  Amended Motion for Post-Sentence Relief Pursuant to Pa.R.Crim.P. 720, 10/11/2007, at ¶ 7.

On June 30, 2009, Nealman filed a timely *pro se* PCRA petition,[14] arguing the court erred in failing to appoint counsel to assist him in his direct appeal. PCRA counsel was appointed, and a hearing was conducted on Nealman's *pro se* petition on July 22, 2014.[15] Thereafter, on July 24, 2014, the trial court entered an order granting Nealman leave to file a direct appeal *nunc pro tunc*. This timely appeal follows.[16]

_____

[14] *See* Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546.

[15] The delay between the filing of Nealman's PCRA petition in June of 2009 and the PCRA hearing conducted in July of 2014 is the result of the following circumstances. On July 24, 2009, David A. Goldman, Esq. was appointed to represent Nealman for the PCRA proceedings. Goldman requested three extensions of time to file an amended petition between October of 2009 and March of 2010. On August 6, 2013, the PCRA court entered an order which (1) noted that Goldman was on inactive status due to medical issues, and (2) appointed present counsel, Stuart A. Clio, Esq., to represent Nealman in this matter. Clio then requested, and was granted, an extension of time to file an amended petition. However, he never filed an amended petition, but rather, on November 25, 2013, filed a motion requesting a hearing on Nealman's original PCRA petition. After several continuances, that hearing was finally held on July 22, 2014.

[16] On August 29, 2014, the trial court ordered counsel to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On October 6, 2014, counsel filed a late response stating that he "adopts the Statement of Matters Complained of on Appeal filed pro se by [Nealman] on February 27, 2008." Statement of Matters Complained of on Appeal, 10/6/2014. The trial court, thereafter, filed an opinion addressing the claims in Nealman's 2009 *pro se* Rule 1925(b) statement. *See Commonwealth v. Thompson*, 39 A.3d 335, 340 (Pa. Super. 2012) ("When counsel has filed an untimely Rule 1925(b) statement and the trial court has addressed those issues we need not remand and may address the merits of the issues presented"), *citing Commonwealth v. Burton*, 973 A.2d 428 (Pa. Super. 2009) (*en banc*).

Nealman's sole issue on appeal challenges the discretionary aspects of his sentence. Specifically, Nealman argues the trial court erred in relying upon his purported lack of remorse as a reason to impose consecutive sentences. Although he denied the allegations at trial, and testified that the acts were consensual, Nealman did not make a statement at the sentencing hearing. Therefore, he contends "the court had no basis for [its] determination that [he] had no remorse." Nealman's Brief at 14. Nealman also asserts the trial court failed to take into account his rehabilitative needs, and imposed a "cumulative sentence [which] exceeds by 40% the aggravated guideline sentence for each of the … offenses." *Id.* at 16.

The standard of review for a claim challenging the discretionary aspects of sentencing is well-established:

> Sentencing is a matter vested in the sound discretion of the judge, and will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Sheller**, 961 A.2d 187, 190 (Pa. Super. 2008) (citation omitted), *appeal denied*, 980 A.2d 607 (Pa. 2009).

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." **Commonwealth v. Hoch**, 936 A.2d 515, 518 (Pa.

Super. 2007) (citation omitted). To reach the merits of a discretionary issue, this Court must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Edwards*, 71 A.3d 323, 329-330 (Pa. Super. 2013) (citation omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013).

Here, Nealman complied with the procedural requirements for this appeal by filing initial and amended post-sentence motions for reconsideration of sentence, by filing a timely a notice of appeal, and by including in his appellate brief a statement of reasons relied upon for appeal pursuant to *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa. 1987), and Pa.R.A.P. 2119(f). Therefore, we must determine whether Nealman raised a substantial question justifying our review.

A substantial question exists when an appellant sets forth "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." *Commonwealth v. Ventura*, 975 A.2d 1128, 1133 (Pa. Super. 2009), *appeal denied*, 987 A.2d 161 (Pa. 2009) (citation omitted).

With respect to Nealman's contentions that (1) the trial court relied upon an impermissible factor, *i.e.*, his purported lack of remorse, in

imposing an unreasonable sentence, and (2) the court failed to consider his rehabilitative needs, we find both raise a substantial question for our review. *See Commonwealth v. Downing*, 990 A.2d 788, 792-793 (Pa. Super. 2010) (claims that trial court relied on an improper factor in imposing sentence, and failed to consider defendant's rehabilitative needs raise substantial questions). However, neither of these claims was raised in his *pro se* or counseled post-sentence motion. Accordingly, they are waived for our review. *See Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003) (holding appellant's failure to raise "the specific claim regarding the sentencing court's alleged failure to state the reasons for his sentence on the record" either at sentencing or in his post-sentence motion waives the claim for appellate review), *appeal denied*, 831 A.2d 599 (Pa. 2003).

Nevertheless, we acknowledge that PCRA counsel **could have** requested to file post sentence motions *nunc pro tunc* after Nealman's direct appeal rights were restored. If he had done so, he may have been able to preserve these claims for our review. Accordingly, because of the problems with appointed counsel's representation, as detailed *infra* in footnote 17, we will address these claims even though they are waived.

With regard to his contention that the trial relied on an impermissible factor at sentencing, Nealman cites *Commonwealth v. Bowen*, 975 A.2d 1120 (Pa. Super. 2009), for the proposition that a defendant's silence at sentencing "should not be used to make a determination that the defendant

lacked remorse." Nealman's Brief at 15. However, the ***Bowman*** Court's holding was not as expansive as Nealman contends.

In that case, Bowman did not testify either at trial, or at the sentencing hearing. In imposing sentence, the trial court considered the fact "that [Bowman] failed to show any remorse for his crimes or take responsibility for them, even after the jury's decision." ***Id.*** at 1121-1122. On appeal, this Court was more troubled by the trial court's consideration of Bowman's "failure to take responsibility for crimes he never admitted to committing[,]" than for its consideration of Bowman's lack of remorse. ***Id.*** at 1127. However, the Court held that a defendant's "silence at sentencing may not be the **sole basis** for finding that a defendant lacked remorse." ***Id.*** at 1127 (emphasis supplied). Nevertheless, the ***Bowman*** Court ultimately affirmed the judgment of sentence after noting the trial court "cited numerous other aggravating factors" to justify the sentence imposed. ***Id.*** at 1128.

Conversely, in the present case, the trial court did not explicitly or implicitly refer to Nealman's failure to make a statement at sentencing. Rather, it noted, among other things, that "**[a]t the trial and at sentencing**, [Nealman] **displayed no remorse** whatsoever for the crimes he committed." Trial Court Order, 1/8/2008, at 2 (emphasis supplied). The trial court had the opportunity to hear Nealman's testimony at his jury trial, and observe his behavior at both his trial and sentencing hearing. We

cannot say the trial court improperly found Nealman "displayed no remorse" under the circumstances of this case, and, therefore, this claim fails.

Furthermore, with regard to his claim that the trial court failed to take into account his rehabilitative needs, Nealman does not specify what those needs are, and what more the trial court could have done, save for impose a shorter term of imprisonment. Moreover, we note that where, as here, the trial court had the benefit of a presentence investigation report, we will presume it was "aware of all appropriate sentencing factors and considerations." **Downing**, **supra**, 990 A.2d at 794. Therefore, no relief is warranted on this issue.

Nealman also asserts the trial court abused its discretion in imposing consecutive, rather than concurrent, sentences. The decision whether to impose consecutive sentences is generally left to the discretion of the trial court, and raises a substantial question for our review "in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." **Commonwealth v. Austin**, 66 A.3d 798, 808 (Pa. Super. 2013) (quotation omitted), *appeal denied*, 77 A.3d 1258 (Pa. 2013). Contrary to Nealman's contentions, we conclude no such "extreme circumstances" exist in the present case.

As the trial court explained in its order denying Nealman's post-sentence motion, Nealman's convictions of rape, IDSI and aggravated

assault were based on "separate acts which took place in different places and at different times." Trial Court Order, 1/8/2008, at 1. The Court stated:

> As the record shows, [Nealman] held the Victim captive in her home for hours. While [Nealman] and the Victim were standing in Victim's kitchen, [Nealman] held a knife to the Victim's throat and said "Do you know how easy it would be for me to slit your throat right now?" This was sufficient for the jury to find [Nealman] guilty of Aggravated Assault. Some time later, in Victim's bedroom, [Nealman] used a metal flashlight to force Victim to perform oral sex on [him]. This was sufficient for the jury to find [Nealman] guilty of Involuntary Deviate Sexual Intercourse. Some time after the incident in the bedroom, [Nealman] forced Victim to engage in vaginal intercourse with [him] downstairs on the couch. This was sufficient for the jury to find [Nealman] guity of Rape by Forcible Compulsion. As the record shows, each of these crimes took place at different times and in different places. This fact alone justifies running [Nealman's] sentences consecutively as opposed to concurrently.

*Id.* at 1-2. The court also noted that before deciding to impose consecutive sentences, it considered the fact that Nealman "displayed no remorse" for the crimes, either at trial or sentencing, and the victim suffered "severe trauma" as a result of the incident. *Id.* at 2. *See* N.T., 7/26/2007, at 3-8 (victim's statement at sentencing).

We remind Nealman that he is not entitled to a "'volume discount' for his crimes by having all sentences run concurrently." *Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. Super. 1995). *See also Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa. Super. 2005) (42 Pa.C.S.A. § 9721 "affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to

sentences already imposed.").  Accordingly, finding no abuse of discretion on the part of the trial court, we conclude that Nealman is entitled to no relief, and we affirm the judgment of sentence.[17]

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/26/2015

_____

[17] We are compelled to address the utter lack of effort expended by appointed counsel in this case.  Present counsel was appointed on August 6, 2013, to represent Nealman in his PCRA proceedings.  Although Nealman was ultimately afforded relief in the form of a direct appeal *nunc pro tunc*, counsel never amended Nealman's PCRA petition prior to requesting a hearing, even though he was granted an extension of time to do so, and he never asked the trial court for leave to file post-sentence motions *nunc pro tunc* after Nealman's direct appeal rights were restored.  Moreover, counsel neglected to file a timely Rule 1925(b) concise statement, but rather, simply adopted Nealman's *pro se* statement.  While we ultimately conclude Nealman is entitled to no relief, we remind counsel that his obligations to represent his client entail more than simply his entry of appearance.