J-S45026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JUSTIN AHMAD CLARK | |
| Appellant | No. 2005 MDA 2014 |

Appeal from the Judgment of Sentence of June 23, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No.: CP-22-CR-0002723-2013

BEFORE:  BOWES, J., WECHT, J., and FITZGERALD, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED JULY 21, 2015**

Justin Ahmad Clark appeals from the judgment of sentence entered on June 23, 2014.  We affirm.

In this case, Clark was charged with criminal homicide, 18 Pa.C.S.A. § 2501; attempted criminal homicide, 18 Pa.C.S.A. § 901 (§ 2501); and carrying a firearm without a license, 18 Pa.C.S.A. § 6106.  The trial court summarized the basic factual history of this case as follows:

> [On March 9, 2013,] Rob Burris was walking near the intersection of Mayflower and 14th Street, in the Allison Hill section of the City of Harrisburg, when he was struck and killed by a bullet to his head.  Jonathan Ramsey ("Ramsey") testified that Clark asked him for a ride to Vernon Street in Harrisburg, Pennsylvania, because he wanted to confront an individual named Bennie Chisolm.  Ramsey drove with Clark in the front passenger seat to 14th and Vernon, at which point Clark

---

[*]    Former Justice specially assigned to the Superior Court.

indicated that he saw an individual known to associate with Chisolm, nicknamed "Mano." Clark told Ramsey to "spin the block," and Ramsey proceeded to drive down 14th Street, turn onto Market and then turn onto Mayflower. While Ramsey was driving around the block he saw Clark retrieve a gun from his clothing. Clark instructed Ramsey to pull up at 14th and Mayflower and to stop. Clark then rolled down the window and started shooting towards a group of people. Rob Burris suffered a gunshot wound to the back of his head. Based on the location of the wound and the bullet's trajectory, Rob Burris, most likely, died instantaneously.

Trial Court Memorandum and Order ("T.C.M."), 10/10/2014, at 1-2 (citations to record omitted).

Clark was two weeks shy of his eighteenth birthday at the time of the shooting. A jury trial commenced on April 22, 2014.

At trial, Chisholm testified that he and Clark had gotten into a physical fight late in the summer of 2012. Notes of Testimony ("N.T."), 4/21-25/2014, at 53-55. Chisolm testified that he and Clark had a verbal run-in in February 2013 when "[n]o guns were drawn, they were just shown." *Id.* at 60-63. Later, Chisholm shot at Clark's brother with a 20-gauge sawed-off shotgun after striking Clark in the head with the same gun. *Id.* at 64-72. On March 9, 2013, Chisholm was with Burris and others when the shots were fired from behind him. *Id.* at 80-82.

Aja Lewis knew Chisholm, Clark, Burris, and Clark's brother. *Id.* at 98-102. Lewis testified that she saw Clark in the passenger seat of a car on the day Burris was killed. *Id.* at 103-04. Lewis called Chisholm because she knew he was in the area and she suspected that Clark was going after

Chisholm.  *Id.* at 105-06.  About twenty minutes later, Lewis learned that Burris had been killed.  *Id.* at 107.

Ramsey testified that he knew both Chisholm and Clark and knew about the problems between them.  *Id.* at 171-76.  Ramsey testified that he was driving when Clark stopped him and asked for a ride to go fight Chisholm.  *Id.* at 186-87.  At that point, Ramsey did not know Clark had a gun.  *Id.* at 194.  Clark told Ramsey to pull the car over, and then Clark rolled down the window and started shooting into a group of people.  *Id.* at 195-96.  Ramsey drove home with Clark and Clark decided that they should go to a basketball game to establish an alibi.  *Id.* at 197-99.  They saw Devacio McGowan, picked him up, and then switched to Clark's car.  *Id.* at 101-02.  McGowan told them that someone had been shot so they drove over to see what happened.  *Id.* at 205.  While they were watching the scene, Clark told McGowan that he was the shooter.  *Id.* at 206-07.

The three men then went to the basketball game.  *Id.* at 208.  At the basketball game, they found out that Burris had been killed.  *Id.* at 209.  After the game, Clark dropped McGowan and Ramsey off, and told Ramsey that he was going to Lancaster.  *Id.* at 211-12.

McGowan confirmed that he went to a basketball game with Ramsey and Clark.  *Id.* at 286.  Because McGowan's testimony differed from  his prior statement to police, McGowan read portions of that statement in which he told police that Clark admitted to the shooting to the jury.  *Id.* at 303, 305.  However, McGowan stated that he was high when he gave the

- 3 -

statement and had no memory of it. *Id.* at 301-04. The Commonwealth then played McGowan's recorded statement to the police for the jury. *Id.* at 311.[1]

Clark testified in his defense that he did not shoot Burris, but admitted that he disposed of the gun that was used in the shooting. *Id.* at 473. Clark testified that he was at the basketball game when his brother approached him and asked Clark to dispose of a gun. *Id.* at 474-76. Clark also said that his brother was carrying Clark's phone at the time of the shooting. *Id.* at 478. Clark testified that, after he received the gun from his brother, he drove into Harrisburg to sell drugs and get some money, and then he drove to Lancaster. *Id.* at 479-81. Clark claimed that he sold the gun to someone named Kurt in Lancaster. *Id.* at 483-84.

On April 25, 2014, the jury found Clark guilty of first degree murder, attempted murder, and carrying a firearm without a license. The trial court requested a pre-sentence investigation report ("PSI") and a sentencing memorandum from Clark and the Commonwealth. On June 23, 2014, the trial court sentenced Clark to life without parole on the homicide conviction.

---

[1] The Commonwealth also presented the testimony of various police officers who detailed the circumstances of the arrests of and statements from the various individuals involved, testimony regarding ballistics and the recovery of the gun used in the shooting, testimony regarding Clark's cellphones and the discovery of information that showed the location of the phones, and medical testimony about the cause and manner of Burris' death.

Clark also was sentenced to twenty to forty years in prison for attempted homicide and three to six years' incarceration for the carrying a firearm without a license conviction. All sentences were ordered to run concurrently.

On June 26, 2014, Clark timely filed a post-sentence motion in which he challenged the discretionary aspects of his sentence and the weight of the evidence. After briefing, on October 8, 2014, the trial court heard argument on the motion. On October 10, 2014, the trial court denied the motion. No direct appeal was filed.

On November 12, 2014, Clark filed a petition for relief pursuant to the Post Conviction Relief Action ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. In his petition, Clark sought reinstatement of his direct appeal rights, alleging that his counsel was *per se* ineffective for failing to file an appeal. The Commonwealth did not object to reinstatement of Clark's appellate rights. On November 18, 2014, the PCRA court granted Clark's PCRA petition.

On November 25, 2014, Clark timely filed a notice of appeal. On December 1, 2014, the trial court ordered Clark to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Clark timely complied.

Clark raises three issues for our review:

I.     Whether the trial court abused its discretion in refusing to allow Commonwealth's Exhibit 47 – a prison note written by [Clark] – and Defense Exhibit 2 – a witness' recantation letter – to go out with the jury during its deliberations?

II.    Whether the trial court erred in denying [Clark's] Post-Sentence Motion where [Clark's] convictions were against

the weight of the evidence so as to shock one's sense of justice as [Clark] was never shown to have committed the crimes alleged?

III. Whether the trial court erred in denying [Clark's] Post-Sentence Motion where [Clark's] sentence was excessive and unreasonable as the trial court failed to consider statutorily prescribed factors pursuant to 18 Pa.C.S.A. [§] 1102.1(d)?

Clark's Brief at 6.

Clark first challenges the trial court's decision not to allow certain exhibits to be viewed by the jury during its deliberations. Clark asserts that the trial court erred when it did not allow the jury to take with it during deliberations a note written by Clark to Ramsey and a letter purportedly written by Ramsey in which he recanted his statements about Clark's involvement in the crime. Clark argues that both exhibits speak to Clark's and Ramsey's credibility, which were paramount in this case. Clark's Brief at 16-18.

We review a trial court's decision regarding which exhibits go with a jury for an abuse of discretion. *Commonwealth v. Bango*, 685 A.2d 564, 565 (Pa. Super. 1996). By rule, "the jury may take with it such exhibits as the trial judge deems proper." Pa.R.Crim.P. 646(A). However, certain exhibits, such as transcripts of testimony, written confessions, and the

criminal information or indictment, are not permitted to go with the jury.[2] Pa.R.Crim.P. 646(C).

In a similar case, a defendant asked the trial court to provide the jury with a letter written by a Commonwealth witness that cast doubt on his credibility. ***Commonwealth v. Bridges***, 757 A.2d 859, 877 (Pa. 2000), *abrogated on other grounds by* ***Commonwealth v. Freeman***, 827 A.2d 385, 412 (Pa. 2003). The trial judge refused to do so, holding that the letter would have unnecessarily highlighted that piece of evidence. ***Id.*** at 877-78. Our Supreme Court found no abuse of discretion based upon that reason and also because "the jury was well aware of the letter" as the witness had been cross-examined about the letter, the contents had been read into evidence, and it was part of closing arguments. ***Id.*** at 878.

Here, the jury asked to see three exhibits: the two at issue on appeal and the text messages from Clark's phone, a defense exhibit. N.T., 4/21-25/2014, at 624-25. The parties and the trial court agreed that the text messages could go out with the jury. ***Id.*** at 625. However, the trial court did not allow the other two exhibits because "[t]hey're formal statements which the [trial court] typically does not send out to the jury. The parties both emphasized and displayed portions that they wanted the jury to consider." ***Id.***

---

[2] The jury charge also is not permitted to go with the jury, subject to certain exceptions. ***See*** Pa.R.Crim.P. 646(B), (C).

The letter written by Clark was read to the jury by Ramsey and the Commonwealth published a copy to the jury. *Id.* at 219-21. The Commonwealth examined Ramsey about the letter. *Id.* at 221-24. Ramsey was cross-examined about the letter. *Id.* at 226-27. Clark also testified about the letter and what he meant in the letter. *Id.* at 469-73. Clark was also cross-examined about the letter. *Id.* at 502-05.

Ramsey also was questioned about the recantation letter which Clark introduced during Ramsey's cross-examination. Ramsey denied writing or signing the letter. *Id.* at 252-53, 254-56. Clark later introduced the letter through Ramsey's former cellmate, Raymond Jones, who testified that he witnessed Ramsey write the recantation letter and that he signed the letter as a witness. *Id.* at 425-26. Jones read the letter into evidence. *Id.* at 426-27.

Clearly, both pieces of evidence were highlighted to the jury. As with ***Bridges***, both letters were read into evidence. Both letters were covered in direct and cross-examination. Based upon ***Bridges***, we find no abuse of discretion by the trial court in refusing to permit the letters to go out with the jury.

Clark next challenges the weight of the evidence supporting his conviction and the trial court's denial of his post-sentence motion. Our standard of review on a challenge to the weight of the evidence is entwined with the trial court's review of the same challenge:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Widmer*, 744 A.2d 745, 751–52 (Pa. 2000); *Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer*, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Brown*, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. *Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Widmer*, 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

> **Widmer**, 744 A.2d at 753 (quoting **Coker v. S.M. Flickinger Co.**, 625 A.2d 1181, 1184–85 (Pa. 1993)).

**Commonwealth v. Clay**, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations modified).

Clark makes the same claims here as he did in his post-sentence motion, namely that Ramsey's testimony and McGowan's prior statement that Clark was the shooter were unreliable. In response, the trial court stated:

> Here, in addition to the eye witness testimony of Jonathan Ramsey and the prior statement given by Devacio McGowan, the facts supporting Clark's conviction were substantial. The Commonwealth presented testimony from Bennie Chisolm that Clark had a motive to kill Bennie, and that Rob was with Bennie when Rob was shot and killed. Aja Lewis testified for the Commonwealth that she saw Clark in a car in the vicinity of the shooting at the time of the shooting, that she warned Bennie that Clark was in the area, and that Bennie called her later to tell her that the people she warned him about killed Rob. The Commonwealth also presented evidence that a cellphone linked to Clark was in the vicinity of the shooting around the time the shooting happened, then was taken to Hershey, and finally taken to Lancaster. The location of the cell phone at the times specified correlated with Jonathan Ramsey's account of where he went with Clark after the shooting, and where Clark said he was going to dispose of the gun.

The only evidence presented that Clark was not the shooter was his own testimony. [The trial court found] that Clark's testimony was not credible, and that it should certainly not be given greater weight than the overwhelming evidence the Commonwealth presented of Clark's guilt.

T.C.M. at 3.

As the trial court noted, there was evidence that corroborated Ramsey's testimony and that the testimony supported the verdict. The trial court found that the jury's verdict did not shock its conscience. We must give the utmost deference to the trial court's conclusions regarding the weight of the evidence. **See Clay**, *supra*. We find no reason in the record to determine that the trial court abused its discretion in reaching that conclusion.

Finally, Clark challenges the discretionary aspects of his sentence.

"It is well-settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." **Commonwealth v. Austin**, 66 A.3d 798, 807–08 (Pa. Super. 2013).

Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [**see** Pa.R.A.P. 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements we will then proceed to decide the substantive merits of the case.

**Id.** (brackets in original).

J-S45026-15

***Commonwealth v. Antidormi***, 84 A.3d 736, 759 (Pa. Super. 2014).

Here, Clark has filed a timely notice of appeal and has preserved the issue in his written post-sentence motion. Clark also has included a Rule 2119(f) statement in his brief. Clark's Brief at 13-15. Our next step is to determine whether Clark has raised a substantial question.

In his Rule 2119(f) statement, Clark argues that his life sentence is excessive and asserts that there were factors that the court did not consider adequately. Clark's Brief at 13-15. We have held previously that a similar claim of failure to consider sentencing factors in a challenge to a life sentence for a juvenile raised a substantial question. ***Commonwealth v. Seagraves***, 103 A.3d 839, 842 (Pa. Super. 2014). Likewise, we find that Clark has raised a substantial question.

Clark argues that the court did not consider the statutory factors in sentencing him to life in prison. Clark also suggests that certain mitigating factors, such as his lack of familial support, his upbringing in a rough neighborhood, his lack of criminal sophistication, his lack of a history of violence, and his amenability to rehabilitation, should have been given more weight. Clark's Brief at 22-24.

We review a challenge to the discretionary aspects of sentence for an abuse of discretion. ***Seagraves***, 103 A.2d at 842. Further, when a PSI is available to the trial court, we presume that the trial court "was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors." ***Id.***

- 12 -

The General Assembly set forth the following factors to be considered when a trial court must sentence a defendant convicted of homicide who was a juvenile at the time the crime:

(1) The impact of the offense on each victim, including oral and written victim impact statements made or submitted by family members of the victim detailing the physical, psychological and economic effects of the crime on the victim and the victim's family. A victim impact statement may include comment on the sentence of the defendant.

(2) The impact of the offense on the community.

(3) The threat to the safety of the public or any individual posed by the defendant.

(4) The nature and circumstances of the offense committed by the defendant.

(5) The degree of the defendant's culpability.

(6) Guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing.

(7) Age-related characteristics of the defendant, including:

    (i) Age.

    (ii) Mental capacity.

    (iii) Maturity.

    (iv) The degree of criminal sophistication exhibited by the defendant.

    (v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.

    (vi) Probation or institutional reports.

    (vii) Other relevant factors.

18 Pa.C.S.A. § 1102.1.

The trial court stated that it considered the PSI, testimony, and the pre-sentence memoranda submitted by the parties, along with all the statutory factors. T.C.M. at 4; N.T., 6/23/2014, at 55-56. The court also reviewed each of the section 1102.1 factors. N.T., 6/23/2014, at 56-59. The trial court particularly noted the impact on the victim's family, several of whom provided victim impact statements at sentencing, the fact that Clark fired up to eleven shots into a group of people, that Clark intended to kill Chisholm and was not acting impulsively or recklessly, that Clark was almost eighteen at the time of the shooting, that Clark had a prior record related to drugs, and that rehabilitation thus far had been unsuccessful. Based upon these factors and the other considerations, the trial court sentenced Clark to life in prison. The trial court considered all the factors that were required and did not abuse its discretion in concluding that a life sentence was appropriate. Therefore, this issue does not merit relief.

Judgment of sentence affirmed.

Judge Bowes joins the memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2015

- 14 -