J-S56027-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MIGUEL MILLAN | : | |
| | : | |
| Appellant | : | No. 536 EDA 2020 |

Appeal from the Judgment of Sentence Entered November 21, 2014,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0014355-2010.

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                       Filed: March 5, 2021

Miguel Millan appeals the judgment of sentence imposed following revocation of his probation for a 2010 charge for possession with intent to deliver.  Upon review, we affirm.

We summarize Millan's numerous criminal offenses and probation violations as follows.  On November 24, 2009, Millan was arrested and charged with retail theft.  On April 7, 2010, he entered into a negotiated guilty plea, and the trial court sentenced him to twelve (12) months of the Intermediate Punishment Program (IPP) followed by two (2) years' probation.

Several months later, on October 7, 2010, following a violation of probation ("VOP") hearing, the trial court continued Millan's probation.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On January 26, 2011, Millan entered into a negotiated guilty plea to the 2010 possession with intent to deliver ("PWID") at issue here, and the trial court sentenced him to three (3) years' probation. The trial court also found that Millan violated his probation on the retail theft case and continued his probation.

On June 3, 2011, following a VOP hearing, the trial court revoked Millan's probation on both cases and sentenced him to eleven and a half (11.5) to twenty-three (23) months' incarceration followed by five (5) years' probation on each case, to run concurrently.

On April 9, 2013, Millan entered into a negotiated guilty plea to a second charge of PWID. The trial court sentenced Millan to eleven and a half (11.5) to twenty-three (23) months' incarceration followed by five (5) years' probation with immediate parole. Additionally, following a VOP hearing, the trial court continued Millan's probation on the retail theft and the 2010 PWID.

On February 26, 2014, after another VOP hearing, the trial court again continued Millan's probation on the retail theft and the 2010 PWID.

On April 3, 2014, Millan was arrested for: (i) stalking - repeatedly commit acts to cause fear, (ii) harassment - communicates lewd, threatening language, and iii) contempt for violation of a PFA order. At a hearing on June 25, 2014 on these new charges, Millan's ex-girlfriend and mother of his child testified that Millan sent her a picture of him with a needle in his arm threatening to stab her with it. Millan also repeatedly sent text messages with harsh and threatening language to her. Millan ultimately entered into a

negotiated guilty plea to the new charges. The trial court sentenced Millan to eleven and a half (11.5) to twenty-three (23) months' incarceration followed by eighteen (18) months' probation. ***Additionally, the trial court specifically ordered Millan to end all contact with the Complainant.*** The trial court also held a VOP hearing on Millan's three other probation cases. The trial court revoked Millan's probation in all three cases and resentenced him to one (1) to two (2) years' incarceration plus five (5) years' consecutive probation on the retail theft case, ten (10) years' probation on the 2010 PWID and ten (10) years' probation on the 2013 PWID, each to run concurrently to the sentence imposed on the new charges.

Millan continued to harass the Complainant by way of letters and phone calls from prison. The trial court held another VOP hearing on November 21, 2014, and, at the conclusion of the hearing, found Millan in violation of its probation. The trial court revoked probation and sentenced Millan to five (5) to ten (10) years' incarceration on the 2010 PWID case, followed by ten (10) years' probation on the 2013 PWID case. The trial court ordered these VOP sentences to run consecutively to any other sentence Millan may have been serving.

On December 10, 2014, Millan filed a motion for reconsideration of his VOP sentences, which the trial court denied. No direct appeal was taken.

Following two Post–Conviction Relief Act ("PCRA") petitions, the trial court reinstated Millan's appellate rights *nunc pro tunc* regarding the VOP sentences for the retail theft and the 2010 PWID cases. On February 6, 2020,

Millan timely filed the instant direct appeal regarding only his VOP sentence of incarceration for the 2010 PWID case. Millan raises one issue for our review, namely whether this sentence was unduly harsh and unreasonable for his violation of probation on the 2010 PWID case. Millan's Brief at 6.

Millan challenges the discretionary aspects of the incarceration sentence entered on November 21, 2014 for violation of probation in his 2010 PWID case. "It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." **Commonwealth v. Austin**, 66 A.3d 798, 807-08 (Pa. Super. 2013) (citation omitted). This Court has explained that, to reach the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine the following factors:

> (1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

**Commonwealth v. Colon**, 102 A.3d 1033, 1042–43 (Pa. Super. 2014) (quoting **Commonwealth v. Austin**, 66 A.3d 798, 808 (Pa. Super. 2013)).

Here, Millan timely appealed and set forth a statement of reasons for his appeal, satisfying the first and third requirements under **Colon**. Regarding the other two requirements, we must review each one for compliance.

Regarding preservation of the issues, in his 2119(f) statement, Millan claims that the trial court imposed a sentence that was manifestly excessive. Millan's Brief at 16. Specifically, Millan argues that the trial court failed to adequately consider certain mitigating factors, including his childhood circumstances, criminal background, and character. Millan also argues that the trial court did not give any reasons for imposing a 5 to 10 year sentence of incarceration or provide a hearing on his motion for reconsideration given the severity of this sentence. We observe that Millan did not raise these arguments before the trial court, and therefore did not preserve them. Because Millan did not satisfy the second requirement under *Colon*, we will not review the merits of these claims.

However additionally, Millan argues that the court failed to adequately consider the factors set forth in Sentencing Code, particularly his rehabilitative needs. He claims that he did not threaten his ex-girlfriend and only committed technical violations of probation for his 2010 PWID case. Our review of the record reveals that Millan preserved this issue, and therefore he has satisfied the second requirement under *Colon*. Accordingly, we must consider whether Millan's claim raises a substantial question.

We interpret Millan's claim to be that he received an excessive sentence for his probation violation based upon only technical probation violations. This Court has found that, a probation revocation sentence based solely on technical violations and claimed to be excessive, raises a substantial question. *Commonwealth v. Malovich*, 903 A.2d 1247, 1253 (Pa. Super. 2006);

*Commonwealth. v. Sierra*, 752 A.2d 910, 913 (Pa. Super. 2000). We therefore will address the merits of this claim.

This Court has stated:

> The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment — a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.
>
> In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference.
>
> Upon revoking probation, a sentencing court may choose from any of the sentencing options that existed at the time of the original sentencing, including incarceration. [U]pon revocation [of probation] . . . the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence.

*Colon*, 102 A.3d at 1044 (quotations and citations omitted).

When imposing a sentence, the trial court must follow the general principle that the sentence be "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Additionally, where probation has been revoked, a sentence of total confinement may only be imposed if:

(1) the defendant has been convicted of another crime; or

- 6 -

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S.A. § 9771(c).

Millan claims that his sentence was unduly harsh and unreasonable in light of his violations, which were only technical in nature. Millan Brief at 17. Regarding the violation itself, Millan argues that he did not directly contact the Complainant as prohibited by the court. Additionally, his communication was not threatening or violent, but merely indicated he would seek custody of his son when he got out of prison. Thus, according to Millan, "a conviction for [PWID] where he originally received a sentence of three years['] probation should not have resulted in a five (5) to ten (10) year state sentence on the basis of a letter that had nothing to do with the original offense" and was not grave enough to justify such a sentence. Millan's Brief at 18-19.

Millan relies on a case where this Court has rejected lengthy incarceration sentences imposed based solely upon technical violations of probation. In **Commonwealth v. Parlante**, 823 A.2d 927 (Pa. Super. 2003), this Court found that the trial court abused its discretion where it imposed a lengthy sentence based on a number of technical violations. There, the trial court based its revocation sentence solely on the likelihood that the defendant would violate probation again without considering that her few crimes were not violent among other important factors. While this Court agreed that the

defendant should serve some prison time for her violations, we concluded 4 to 8 years was excessive. *Id.* at 930-931.

Similarly, we observe that in *Commonwealth v. Williams*, 69 A.3d 735 (Pa. Super. 2013), we rejected a sentence of 24 to 48 years of incarceration for violation of probations based upon subsequent convictions for unrelated offenses. We concluded that, although the trial court considered all of the relevant factors set forth in Sentencing Code and accorded reasonable weight to each, the sentence for the violation was not "consistent with" those factors. *Id.* at 742. In *Williams*, the defendant stole property worth only a few thousand dollars, and although she was aggressive during some of the incidents, her crimes were not on par with more serious violent crimes. Nonetheless, the trial court imposed an incarceration sentence commensurate with more violent crimes such as murder or rape. *Id.* at 742-743. On appeal, this Court recognized that "although such events should occur infrequently, the appellate courts retain the authority to reject a sentence as unreasonable/or excessive . . ." and *Williams* was such a case. *Id.* at 743 (citing *Commonwealth v. Walls*, 926 A.2d 957, 964 (Pa. 2007)).

Here, the trial court imposed a revocation sentence of five (5) to ten (10) years of incarceration, the statutory maximum, for Millan's 2010 PWID (heroin). Based upon our review, the instant case does not warrant the type of relief afforded in *Parlante* and *Williams*.

Initially, the trial court sentenced Millan to 3 years' probation for his 2010 PWID conviction. Just a few months later, Millan violated his probation,

and the court revoked his probation and resentenced him to eleven and a half (11.5) to twenty-three (23) months' incarceration plus five (5) years of probation. Thereafter, Millan violated his probation two more times. For the second and third violation, the court merely maintained Millan's probation.

Notably, three of Millan's probation violations resulted from guilty pleas to new offenses, including a second PWID, stalking, harassment, and contempt of a PFA. Then, following Millan's fourth probation violation, the trial court increased Millan's probation sentence and gave Millan a very stern warning that if he bothered the Complainant and her kids, one of which was his, the court would revoke his probation and give him a lengthy state sentence. N.T., 6/25/14, at 31-33.

A few months later, despite the court's admonition, Millan contacted the Complainant from prison. At his fifth violation hearing for his 2010 PWID conviction, the court stated in addressing Millan's ex-girlfriend:

> I find that he has stalked you by writing the letter to your home address. I find that he stalked you by trying to make contact with you through the phone, from the prisons. I find that he violated my court order when I told him not to try and contact you.

*Id.* at 17. The court continued generally:

> I believe that [Complainant] needs a measure of protection. I'm going to try to give her that . . . . I specifically told him not to contact [Complainant] under any circumstances.
>
> That was my order I believe he tried to play close to the line. I believe he's a slickster, I believe he's a con man, and that's what he's trying to do, and here today, he's trying to con me.

*Id.* at 18-19. As a result, the court found Millan in violation for a fifth time, revoked his probation, and imposed a five (5) to (10) year sentence of incarceration.

In its opinion, the court further explained it reasons:

[T]he court gave careful consideration to all relevant factors in sentencing [Millan]. . . . [Millan] has been convicted of a number of felonies. [H]e has shown an inability to abstain from criminal behavior, as he has repeatedly violated probations imposed by this Court. More importantly, [Millan] violated the order of this Court, which explicitly required [him] to end all contact with the Complainant. Thus, the sentence imposed by this Court is necessary for the protection of the Complainant and to vindicate the authority of this Court. The sole fact that [Millan] contacted the Complainant (in violation of the order of this Court) shows that [Millan] is unable to abide by this court's authority, and that he continues to pose a threat to the Complainant if not incarcerated.

\*\*\*

[Furthermore], [t]he sentence was necessary to foster [Millan's] rehabilitation. The basic objective of probation is to provide a means to achieve rehabilitation without resorting to incarceration. . . . When it becomes apparent that the probation order is not serving this desired end the court's discretion to [impose] a more appropriate sanction should not be fettered. This court afforded [Millan] many opportunities to show his ability to comport his behavior with the law. Having violated each probation sentence as well as directly violating the order of this Court, it has become apparent that probation sentences have not facilitated [Millan's] rehabilitation. Accordingly, incarceration is necessary to foster [Millan's] rehabilitation.

Trial Court Opinion, 6/26/20, at 7-8 (citations omitted).

Based on the above, it is evident that the trial court considered the relevant sentencing factors. Given Millan's history, the trial court was well familiar with Millan. The court gave Millan multiple opportunities to show that

- 10 -

he could rehabilitate within society, however probation was clearly ineffective. The lesser sentence of incarceration previously imposed by the court likewise did not deter Millan. As such, the circumstances of this case supported the court's imposition of a sentence of total confinement as essential to vindicate the authority of the court. We therefore conclude that the trial court did not abuse its discretion in imposing the five (5) to (10) year maximum incarceration sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/5/21