**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Shaun Patrick AUSTIN, Appellant.**

Superior Court of Pennsylvania.

Argued April 2, 2013.
Filed May 13, 2013.

Brian C. Lawser, Easton, for appellant.

John M. Morganelli, District Attorney, Easton, for appellee.

BEFORE: STEVENS, P.J., OLSON, J., and STRASSBURGER, J.*

OPINION BY STEVENS, P.J.

This is an appeal from the January 13, 2012 judgment of sentence entered in the Court of Common Pleas of Northampton County after this Court vacated Appellant's original sentence on the basis it was manifestly excessive and remanded for resentencing. Upon remand, the trial court imposed an aggregate sentence of thirty-five years to seventy years in prison for Appellant's convictions on 96 counts of sexual abuse of children (possession of child pornography).[1] Appellant now claims his new aggregate sentence is also manifestly excessive and an abuse of the trial court's discretion. For the following reasons, we affirm.

A panel of this Court has previously set forth the relevant factual and procedural history, in part, as follows:

On May 16, 2008, officers of the Colonial Regional Police Department went to Appellant's house to locate a runaway female, R.M. With Appellant's permission, Officer David Templeton entered Appellant's house and located R.M. upstairs. Officer Templeton took R.M. into custody and transported her back to the police station.

After Officer Templeton brought R.M. to the police station, Sergeant Michael Melinsky received a complaint from Appellant that he had just received a threatening phone call. Sergeant Melinsky and Officer Templeton arrived at Appellant's apartment to investigate the complaint, and asked Appellant if he thought the call was related to R.M. Appellant responded that he thought it was.

Appellant had a female companion present at his apartment, so Sergeant Melinsky, Officer Templeton, and Appellant entered Appellant's bedroom to talk in private. During their conversation, Sergeant Melinsky asked Appellant if he had a relationship with R.M., and Appellant explained that he met R.M. on the internet and that he dated and had sex with R.M. Sergeant Melinsky then asked Appellant if there were any other girls that he had met over the internet, and Appellant said yes. Sergeant Melinsky told Appellant that he did not have to answer any more questions and that the officers would leave at any time. Appellant agreed to talk, and admitted to having sexual relations with underage females, including a victim known as K.

Sergeant Melinsky left Appellant's apartment, and went outside to smoke a cigarette and call Detective Hammer. When finished, Sergeant Melinsky reentered Appellant's apartment with Appellant's permission. Detective Hammer

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S.A. § 6312(d)(1).

later arrived at Appellant's apartment, and Sergeant Melinsky let Detective Hammer inside Appellant's residence. Detective Hammer engaged in a conversation with Appellant, informing Appellant that he was not under arrest, did not have to answer any questions, and if he wanted the police to leave, the police would leave. Appellant agreed to talk with Detective Hammer. Appellant told Detective Hammer that he had video images saved on his computer and flash drives. Appellant also told Detective Hammer that he had a "problem" and wanted help. During the interview, Appellant's demeanor was calm and he engaged in casual conversation with the officers.

Detective Hammer asked Appellant if he could retrieve the computer and the flash drives. Appellant showed Detective Hammer where the computer and the flash drives were located, and gave them to Detective Hammer. Detective Hammer transported the computer and the flash drives from Appellant's apartment to the police station. The computer and flash drives contained pictures of child pornography.

The police arrested Appellant. While in custody, Appellant waived his *Miranda* rights, and executed a written confession.

On June 20, 2008, the Commonwealth filed a complaint against Appellant, charging him with numerous counts of possession of child pornography.... The case proceeded to [a jury] trial.... At the conclusion of trial, on September 18, 2009, [the] jury found Appellant guilty of 96 counts of possession of child pornography. On December 22, 2009, the trial court sentenced Appellant to consecutive sentences of 9 months to 2 years imprisonment for each of the 96 convictions of possession of child pornography. Appellant's aggregate sentence was 72 years to 192 years.

Appellant filed a timely post-sentence motion to modify sentence, which the trial court denied on March 19, 2010. Appellant filed a timely notice of appeal.

*Commonwealth v. Austin,* No. 1092 EDA 2010, *2–5, 26 A.3d 1188 (Pa.Super. filed 3/11/11) (unpublished memorandum) (footnote added) (footnote omitted).

On direct appeal, Appellant contended the suppression court erred in denying Appellant's suppression motion, Pa. R.Crim.P. 600 motion, and motion *in limine.* This Court found no merit to these issues and affirmed his convictions. *See id.* However, Appellant also contended the trial court abused its discretion in imposing consecutive periods of incarceration at the top end of the standard range for each of the 96 counts of possession of child pornography, resulting in a clearly excessive aggregate sentence of 72 to 192 years in prison. Finding this case to be akin to *Commonwealth v. Dodge,* 957 A.2d 1198 (Pa.Super.2008), *appeal denied,* 602 Pa. 662, 980 A.2d 605 (2009),[2] a panel of this Court concluded the trial court abused its discretion in sentencing Appellant, who was at the time of sentencing twenty-five years old, to a virtual life sentence under the facts and circumstances of this case. *See Austin, supra.* Accordingly, while this Court affirmed Appellant's convictions, the panel vacated the original judgment of sentence and remanded for resentencing.[3]

---

**2.** We note the author of the instant Majority Opinion, President Judge Stevens, filed a Dissenting Opinion in *Dodge.* However, until our Supreme Court overrules the Majority in *Dodge,* this Court is bound by its holdings.

**3.** Appellant filed a petition for allowance of appeal, which our Supreme Court denied on November 11, 2011.

Upon remand, on January 13, 2012, the trial court held a new sentencing hearing, at which the trial court acknowledged this Court had vacated Appellant's original judgment of sentence on the basis the aggregate sentence was manifestly excessive. N.T. 1/13/12 at 2. The trial court indicated it had in its possession, and was going to consider carefully, a presentence investigation report, a psychological evaluation prepared by Doctor Robert E. Wisser, a psychosexual evaluation prepared by Doctor Catherine Surbeck, a psychological evaluation prepared by Frank Dattilio, and an assessment prepared by the Sexual Offenders Assessment Board. N.T. 1/13/12 at 3, 13. Defense counsel provided the trial court with five letters, which were written on behalf of Appellant, and then called Appellant's mother, Cheryl L. Daumer, to the stand to offer a statement on behalf of Appellant. N.T. 1/13/12 at 5. Ms. Daumer informed the trial court Appellant was well-liked when he attended school, was a volunteer firefighter, and "was never a problem." N.T. 1/13/12 at 7. The trial court invited Appellant to make a statement, and Appellant expressed the following:

Obviously, I'm back here again. I was just wondering why you have me in state prison. I've been assaulted numerous times [since I've been] at state prison. It concerns me because I've been assaulted numerous times by staff and inmates. Fortunately, where I'm at now I haven't been assaulted recently. But it's still something I have to watch out for on a daily basis.

It's very stressful, very upsetting. I've had to go on medication to help me sleep and for my depression and my anxiety. It doesn't seem fair at all.

N.T. 1/13/12 at 8–9.

The trial court invited the Commonwealth to present any new evidence or argument, and the Commonwealth stated the following:

[T]he Superior Court did suggest that a life sentence for possession of child pornography is not appropriate.

But I believe that you can't ignore the factors that exist in this case and the totality of the circumstances surrounding [Appellant] and his possession of the child pornography and [Appellant's] participation in the production of some of the pictures and his participation within the pictures themselves.

You may recall, Your Honor, [Appellant] did take pictures of a young girl while he was engaging in oral intercourse with her. The reports indicate that [Appellant] is a high risk to re-offend and is a danger to the community.

And in spite of his volunteering in the community, you recall, Your Honor, [Appellant] is HIV positive or was and had sexual intercourse with young teens, unsuspecting young teens, in spite of his condition.

I think that he continues to pose a high risk to offend, whether it be pornography, producing, participating, or possessing pornography, as well as other sexual deviate acts in the community. And I believe a sentence should reflect the necessity to keep [Appellant] away from the community.

N.T. 1/13/12 at 9–11.

In response, defense counsel indicated the following:

[Appellant], up until the charges in this matter, the other cases he was involved in was, in fact, a well-respected member of society, was a volunteer with the EMS and fire department since the age of 14 officially and even before that.

There had been no indication that he was, in fact, any type of criminal, but

was a, quote, pillar of society, if you will. He was volunteering and helping the public before these allegations arose.

Your Honor, he was found guilty of possession of 96 counts; two, I believe, thumb drives as they were. The sentence, obviously, was excessive or we wouldn't be here today. And this case, there's case law that say it's highly unlikely that any individual possessing one count or one image of child pornography wouldn't have more than one, particularly in the computer age today.

We would request at this time that a sentence be imposed that is not a life sentence but that these charges for the sentence imposed on these charges be reduced dramatically from the original sentence imposed.

And that if nothing else, these sentences be run concurrently because they were found at the same time and they were all on the hard drives that were alleged and found to be in [Appellant's] possession.

\*     \*     \*

Judge, we would also note in the District Attorney's statement that she expressed concern about multiple charges regarding sex with other individuals.

And those charges were dropped. He was convicted regarding one victim. So, in fact, he was falsely accused and those charges were dismissed regarding those other witnesses.

N.T. 1/13/12 at 11–13.

The trial court, specifically noting this Court's reasoning on direct appeal of the original judgment of sentence, indicated it had "carefully considered the guidance provided by the Superior Court with respect to an appropriate sentence in this matter." N.T. 1/13/12 at 4. The trial court then stated, in relevant part, the following on the record:

Possession of child pornography is a serious crime. It is one of the serious crimes of our time. It's devoid of any trace of social value. And child pornography inflicts severe and reprehensible harm upon the child exploited in its production.

The Superior Court also suggested that there was no evidence that [Appellant] manufactured the child pornography.

Unfortunately, the record belies this representation. In fact, while the 96 counts are not necessarily child pornography manufactured by [Appellant], there is no question in the record that [Appellant] produced child pornography. And, in fact, in the process of producing child pornography, raped at least one child.

With respect to the issue of the district attorney mentioning other cases that have been nol prossed, Pennsylvania law permits a court to consider cases and conduct where there have been charges that have not resulted in a conviction.

But it is incumbent on the trial judge to make it clear on the record that the judge is aware that, in fact, they are charges and only charges. And they should be considered appropriately because there is no conviction.

In this case, that takes on a special importance, because I'm also informed by a confession by [Appellant], which was admitted at trial. And in that confession, [Appellant] admits to multiple acts of sexual contact and sexual intercourse with minor children.

In that confession, which was in his own handwriting, [Appellant] indicates that he knowingly and willingly, knew that [C.R.] was 14, had sex with her.

He indicates that he met a[B.] on MySpace. She sent [him] nude pictures

of [her]self and [he] sent nude pictures. She came to [his] apartment and wanted to hookup. [They] didn't.

I have pictures from girls I'm not sure of their age. [Appellant] indicates that when he was 13, he began looking at pictures and movies about underage girls willingly having sex. He also indicates he hooked up with older men from online when he was a minor.

He indicated a Becca when she was 15 in October of 2007, [they] had sex twice in her apartment. He goes on to say he had permission to date from her aunt.

In the presentence report in recounting these images, it's noted that the majority of the images containing children, males and females less than ten years of age, engaging in sex acts with adult men and women. Also found were six images and two video files of [Appellant] having sex with a female later identified by [Appellant] as a 13–year–old from Northampton.

There are several images of girls, and [Appellant] later identified two of the 13–year–old girls that were sending him images of themselves naked.

[Appellant] also related that he had sex with other females that were underage and stated that underage females also sent him photos of themselves via the internet. In the presentence report, I'm also informed with respect to [Appellant's] education and employment. While he has had some problems with employment, there's no question that he has been actively employed most of his life.

Also, he was an Army ROTC cadet in the Lehigh ROTC program from August of 2003 until January of 2005.

He had some emotional abuse from his step-grandmother in the form of disciplines and spankings when he was young, but he admitted to never having been sexually abused.

He's single having never been married nor [having] father[ed] any children.

Of some concern to this court is that [Appellant] related that he has had approximately 50 sexual partners in his lifetime. He indicated that approximately 75 percent of his sexual partners were female and 25 percent were male. . . . He did have a problem with a summer of underage drinking that is no moment. And he was diagnosed with ADHD. He was also an Eagle Scout member and a member of the National Honor Society Order of the Arrow.

N.T. 1/13/12 at 15–18.

The trial court noted the various expert reports in its possession revealed Appellant should receive sexual offender treatment; he is "a high risk offender;" he has a "condition of paranoid schizophrenia or related psychotic disorder[;]" he has "a substantial personality disorder that includes a mixed profile of borderline, narcissistic, and passive/aggressive traits[;]" he is "very regressed and functions on the level of an adolescent;" and he has a sexual attraction to pre-pubescent children. N.T. 1/13/12 at 19–20. The trial court noted the facts revealed Appellant's behavior was a "resistant pattern of sexual deviation" and would not be easy to rehabilitate. N.T. 1/13/12 at 21. The trial court noted:

What is particularly troubling with this case is that it appears from [Appellant's] written confession that he knew he was HIV positive and despite this still had unprotected sexual relations. Such behavior is predatory in nature and it places others in serious risk. This speaks to his passive/aggressive nature, as well as his psychopathology and disregard for the welfare of others.

While there is no history, any criminal activity or any heavy illicit drug or alco-

hol use, [Appellant's] own history of promiscuity and reckless behavior supports the notion that he is likely to re-offend and not be a good candidate for rehabilitation in the community.

He will clearly require intensive, longer term, inpatient counseling for both his mental illness as well as his sexual deviance.

N.T. 1/13/12 at 21–22.

The trial court indicated Appellant showed a lack of remorse and he will need to be on anti-viral medication for the rest of his life. N.T. 1/13/12 at 23. The trial court expressly indicated it was not sentencing Appellant for the rape of a child, since Appellant was tried and sentenced separately for that offense.[4] NT. 1/13/12 at 23. However, the trial court concluded it "would be absurdly irresponsible of the court to not consider the totality of the offender in this case." N.T. 1/13/12 at 24. The trial court noted it was necessary to consider all information in order to focus on Appellant's rehabilitative potential and all other required factors. N.T. 1/13/12 at 24. Finally, the trial court stated, in relevant part, the following:

I have considered the reports of each of these professionals in trying to determine the rehabilitative potential of [Appellant] in this matter. I have considered carefully the sentencing guidelines, which for each of these 96 counts calls for a standard range sentence between restorative sanctions and nine months.

I have also carefully considered the protection of the public, the gravity of the offenses in relation to the impact on the victims and the community. And importantly, I have carefully considered the rehabilitative needs of [Appellant].

This court bears no partiality, prejudice, bias or ill-will towards [Appellant]. And I bring to bear ten years of judicial experience in trying to fashion a fair and just sentence that will meet [Appellant's] rehabilitative needs while nevertheless protecting the community.

I have carefully reflected upon this decision, considering very carefully the decision of the Superior Court remanding this case for re-sentencing[.] My sentence will not be a means of private retribution or judicial policy-making, nor is there any agenda.

Rather, the sentence has been carefully fashioned to take into account the unique characteristics of this offender and his offenses.

The totality of the sentencing factors have been considered as to each individual count and as to the aggregate sentence. . . . And I note, [Appellant], that I had repeated opportunity to observe your demeanor. This is the third sentencing hearing regarding cases where you've been a defendant.

I have also observed you during two trials. The first trial involving these 96 counts, as well as a second trial involving the rape of a child, involuntary deviate sexual intercourse, statutory sexual assault, and endangering, as well as many pretrial hearings.

Also, I had the unfortunate opportunity to observe you when you actually testified as a victim of a brutal assault that took place in [the] Northampton County Prison.

And this court is not without mercy and is not without compassion. And that compassion extends not only to what I term the victims in this case, and that is the children who have been ex-

4. When this Court reviewed Appellant's original judgment of sentence, the panel noted the rape case was a "separate case, deserving of its own unique sentence." *Austin*, 1092 EDA 2010, at 21.

ploited in order to produce this child pornography, but that compassion does extend to you as well, sir.

And this court is not without mercy and is not without compassion. And Sir, I do believe based on the evidence, some of which I just recounted on the record, based on what the professionals say, that you do suffer from a very serious mental illness and sexual deviance that is not amendable to rehabilitation.

And this court is not without mercy and is not without compassion. And I do believe if you are released back into the community that you will victimize other children. And I do believe the record supports my conclusion.

And this court is not without mercy and is not without compassion. And While I do believe that child pornography is devoid of any trace of social value and it inflicts serious and reprehensible harm upon the children exploited in its production, I'm not sentencing you based on any agenda that I have against child pornography.

And this court is not without mercy and is not without compassion. And Possession of child pornography is a serious crime. In this case, as in many cases, it led to an escalation of criminal deviance and sexual criminality that resulted in the rape of a 12–year–old child while you were filming her to produce child pornography. This court does not have to speculate whether your possession of child pornography or your viewing of child pornography would lead to escalating behaviors. We know it. It happened.

And this court is not without mercy and is not without compassion. And You're a sexually violent predator. None of these experts, defense experts or any of the Commonwealth's experts, could point to any way to rehabilitate

you in a fashion or in a way that could allay the fears that there wouldn't be further victims.

And this court is not without mercy and is not without compassion. And That said, from what I can tell of the Superior Court's opinion, I have to fashion a sentence that is not considered a life sentence.

\*     \*     \*

Sir, just so the record is clear, I recognize you were born on July 1, 1984. You completed three years of college. You have been an extensive volunteer in the community as a firefighter and EMT. I have considered the letters, which were submitted during the first sentencing hearing, as well as submitted again here during this sentencing hearing. I recognize that there is a side to you which was willing to help the community, willing to set aside other things you might have wanted to be doing in order to volunteer and the fact that you wanted to volunteer. You wanted to be a firefighter. You had to go to the community college in order to get the necessary courses to be a firefighter, an EMT. To some extent, you were greatly respected. . . .

Again, I want to note for the record I'm not sentencing you today on the other charges. I'm certainly not sentencing you for the charges that were nol prossed. I'm considering the totality of the circumstances though in sentencing you on the possession of child pornography charges.

I do conclude that . . . you're attracted to pre-pubescent children. I also note that I've concluded that there is a pattern of escalation here. Based on all of the information available to me, I'm sentencing you only on possession of child pornography. In considering you as a person and your rehabilitative po-

tential and potential for re-offense, I do find, and I believe the record fully supports, that there's been escalating pattern of criminal behavior involving sexual abuse of young children.... [This] is a carefully considered determination by this court, bringing to bear my ten years of judicial experience as to what is necessary to protect the public, taking into account the gravity of the offenses in relation to the impact on the victim and the community and taking into account your rehabilitative needs. And again, of course considering the sentencing guidelines.... On the 96 counts of possession of child pornography, more properly deemed sexual abuse of children, graded as a felony of the third degree, [the court] recognizes that the standard range sentence is restorative sanctions to nine months, the aggravated range is 12 months.

N.T. 1/13/12 at 26–34.

■ Based on all of the aforementioned, regarding the first 95 counts, the trial court sentenced Appellant to nine months to eighteen months in prison for each count. The trial court directed 49 of the counts shall run concurrently, while 46 of the counts shall run consecutively to each other. On the remaining count, the trial court sentenced Appellant to a consecutive period of six months to twelve months in prison. Thus, Appellant's aggregate sentence was 35 years to 70 years in prison.[5] On January 23, 2012, Appellant filed a timely, counseled post-sentence motion challenging the discretionary aspects of his sentence,[6] which the trial court denied by order entered on January 26, 2012. This timely, counseled notice of appeal followed on Monday, February 13, 2012. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, Appellant complied, and the trial court filed a thorough Rule 1925(a) opinion addressing the merits of the discretionary aspects of sentencing issue now presented on appeal.

Appellant's sole issue on appeal is the trial court abused its discretion in imposing a manifestly excessive aggregate sentence, which resulted in a *"de facto"* life sentence. While Appellant admits each of the individual sentences imposed by the trial court were not excessive, he contends the imposition of consecutive sentences on 47 of the 96 counts resulted in a manifestly excessive aggregate sentence.

■ Initially, we note Appellant is challenging the discretionary aspects of his sentence. *See Commonwealth v. Prisk,* 13 A.3d 526 (Pa.Super.2011). "It is well set-

---

5. The trial court ordered the sentence for this case to be served consecutively to Appellant's judgment of sentence in the case at docket number CP–48–CR–0002007–2008, which this Court affirmed in an unpublished memorandum on March 11, 2011. That case, which was referenced *supra,* involved Appellant's rape of a child. Appellant has presented no specific issue challenging the trial court's imposition of a consecutive sentence in this regard.

6. Although Appellant's post-sentence motion was not time-stamped and docketed by the Clerk of Courts until January 24, 2012, a close examination of Appellant's motion reveals it was received by fax at the Clerk of Court's filing office on January 23, 2012.

Also, the post-sentence motion contains a separate page, which includes a certification of notice of service indicating the motion was properly served upon the Commonwealth and trial court via fax on January 23, 2012. Thus, we deem the motion to have been timely filed on January 23, 2012, which is within ten days of the imposition of sentence. *See Commonwealth v. Felmlee,* 828 A.2d 1105 (Pa.Super.2003) *(en banc)* (indicating Pa.R.Crim.P. 576 governs the filings of matters with the clerk of courts and does not prohibit filing by facsimile, which the trial court may accept within its discretion); Pa.R.Crim.P. 720 (post-sentence motions shall be filed no later than ten days after imposition of sentence).

tled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa.Super.2010) (citation omitted).

Before we reach the merits of this [issue], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. The third and fourth of these requirements arise because Appellant's attack on his sentence is not an appeal as of right. Rather, he must petition this Court, in his concise statement of reasons, to grant consideration of his appeal on the grounds that there is a substantial question. Finally, if the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Malovich*, 903 A.2d 1247, 1250 (Pa.Super.2006) (citations omitted).

In the instant case, Appellant filed a timely notice of appeal, preserved his claims in his timely post-sentence motion,[7] and included in his appellate brief a separate Rule 2119(f) statement. Thus, we proceed to determine whether Appellant has presented a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *See Mastromarino, supra.*

▌ The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *See*

*Commonwealth v. Paul*, 925 A.2d 825 (Pa.Super.2007). "A substantial question exits only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa.Super.2013) (quotation and quotation marks omitted).

▌ "Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa.Super.2011). *See Commonwealth v. Hoag*, 445 Pa.Super. 455, 665 A.2d 1212 (1995) (stating an appellant is not entitled to a "volume discount" for his crimes by having all sentences run concurrently). In fact, this Court has recognized "the imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Commonwealth v. Lamonda*, 52 A.3d 365, 372 (Pa.Super.2012) *(en banc)* (citation omitted). That is "in our view, the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." *Prisk,*

---

7. Appellant also presented the issue in his court-ordered Pa.R.A.P. 1925(b) statement.

13 A.3d at 533 (*quoting Mastromarino, 2 A.3d* at 587) (quotation marks omitted).

█ Instantly, the jury found Appellant guilty of 96 separate offenses for sexual abuse of children (possession of child pornography). These offenses stemmed from Appellant's possession of 96 images, which were stored on Appellant's computer and flash drives, which depicted numerous different children, the majority of whom were engaged in sex acts with adult men and women. Appellant was also depicted in some of the images having sex with a child. As the trial court noted during the sentencing hearing, "child pornography is devoid of any trace of social value and it inflicts serious and reprehensible harm upon the children exploited in its production[.]" N.T. 1/13/12 at 29. Further, the trial court did not impose consecutive sentences for every count; but rather, it imposed concurrent sentences for 49 of the 96 counts. In seeking a reduction in his aggregate sentence, Appellant is seeking a further "volume discount." Thus, in light of the criminal conduct at issue, and the length of the imprisonment, we conclude the trial court's imposition of consecutive sentences on some of the counts, resulting in an aggregate sentence of 35 years to 70 years in prison, does not present a substantial question. *See Prisk, supra* (where the appellant was convicted of 314 counts related to the sexual abuse of his stepdaughter and sentenced to an aggregate of 633 years to 1500 years in prison, the appellant's challenge to the imposition of consecutive sentences did not present a substantial question); *Mastromarino, supra* (where the appellant pled guilty to 1,353 separate counts in connection with the sale of human body parts from corpses and sentenced to an aggregate of 25 years to 58 years in prison, the appellant's challenge to the imposition of consecutive sentences on 53 counts did not present a substantial question). Simply put, this is not a case where the trial court's exercise of discretion resulted in a sentence that is "grossly disparate to [Appellant's] conduct [or] . . . viscerally appear as patently unreasonable." *Mastromarino,* 2 A.3d at 589 (quotation and quotation marks omitted).

█ In any event, assuming, *arguendo,* Appellant has presented a substantial question, thus permitting our review, we note the trial court, which was fully informed by a prior Superior Court opinion, a presentence investigation report, multiple experts' reports, the sentencing guidelines, statements in support of Appellant, and Appellant's in court sentencing statement, has fully and adequately set forth the reasons for its sentence. *See* N.T. 1/13/12 at 15–34; Trial Court Opinion filed 6/14/12 at 10–24. Thus, even if we reached the merits of the issue, we would find the trial court did not abuse its discretion.[8] *See Commonwealth v. Downing,* 990 A.2d 788, 792–93 (Pa.Super.2010) ("Sentencing is vested in the discretion of the trial court

---

8. When this case was before this Court for review of Appellant's original aggregate sentence of 72 years to 192 years in prison, the panel applied *Dodge, supra,* finding a substantial question existed as to the propriety of the trial court's imposition of consecutive sentences on all 96 counts, thus resulting in what the panel characterized as a guaranteed life sentence. *See Austin, supra.* The panel also found that, in light of the characteristics of Appellant's crimes, a guaranteed life sentence merited the conclusion the aggregate sentence was unreasonable, and, thus as indicated *supra,* the panel remanded for resentencing. *See Austin, supra.* Upon resentencing, in this case, the trial court imposed consecutive sentences on less than half of the 96 counts, resulting in an aggregate sentence of 35 years to 70 years, which on its face does not constitute a guaranteed life sentence for the presently twenty-eight year old Appellant. Thus, and in light of the nature of Appellant's criminal conduct, we now specifically find this case distinguishable from *Dodge* in all respects.

and will not be disturbed absent a manifest abuse of that discretion.") (citation omitted).

For all of the foregoing reasons, we affirm.

Affirmed.

STRASSBURGER, J. CONCURS IN THE RESULT.  Judgment Entered.