J-S31018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ZEBBELIN STANDISH | : | |
| Appellant | : | No. 2888 EDA 2024 |

Appeal from the Judgment of Sentence Entered July 18, 2024
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0003165-2022

BEFORE:  PANELLA, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                     **FILED SEPTEMBER 18, 2025**

Appellant, Zebbelin Standish, appeals from the July 18, 2024 judgment of sentence of 81 to 162 years of incarceration entered in the Northampton County Court of Common Pleas following his conviction by a jury of numerous child pornography-related offenses.  Appellant challenges the sufficiency and weight of the evidence; the denial of his motions for judgment of acquittal, for a new trial, and to suppress evidence; an evidentiary ruling; and the discretionary aspects of his sentence.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On August 31, 2022, the Child Predator Section of the Pennsylvania Office of the Attorney General ("OAG") received a CyberTip[1] from the National Center for Missing

_____

[1] A CyberTip is a report generated when an electronic service provider such as a social media application discovers that one of its users has used its product to distribute or possess child pornography.

and Exploited Children ("NCME") that, on May 27, 2022, a user on KIK, a social media/messaging platform, had shared four videos of apparent child pornography via the app. The CyberTip reported the user ID, screen name, and associated email address of the KIK account that shared the videos to another user via a private chat message on KIK. The CyberTip also reported the IP address from which the videos had been uploaded. Agent Brian King of the Child Predator Section reviewed the videos provided by NCME and determined they were, in fact, child pornography.

KIK also provided law enforcement with records that showed that the account had been registered using a Samsung cell phone. Log-in records reported that from May 29, 2022, to June 4, 2022—the day KIK was made aware of the child pornography—the KIK user had accessed the account exclusively from the same IP address that had been used to upload the pornography in the CyberTip.

Law enforcement determined that the IP address from which the child pornography was uploaded was registered to an Alexandra Schmidt at an apartment in Easton, Pennsylvania. Police obtained a search warrant for all electronic devices in the Easton apartment that had internet and video/photo storage capability and executed the search warrant early on the morning of October 7, 2022.

When law enforcement agents knocked on the door, Alexandra Schmidt, Appellant's then-girlfriend, answered and permitted the officers to enter. The officers searched the house and recovered three electronic devices: Ms.

Schmidt's tablet, her cell phone, and a computer, each of which the officers searched on-site. None of the devices contained any child sexual abuse material. The officers also found a bin with some other cell phones, which the officers were unable to search either because the phones were broken, or the officers were unable to power them on.

During their search, the agents observed items that indicated another person lived in the apartment, including luggage carrying a tag with Appellant's name on it. Ms. Schmidt told the officers that her then-boyfriend, Appellant, also lived in the apartment with her, but he was currently at work.

The officers informed Ms. Schmidt that they were present pursuant to a search warrant for child pornography. Ms. Schmidt became very upset but cooperated with the officers. Ms. Schmidt told the officers that she was unaware that Appellant had a KIK account but told the officers that the username reported in the CyberTip was similar to one that Appellant used on other social media profiles.

After speaking with Ms. Schmidt, the officers left her apartment and travelled to Appellant's workplace. Initially, the officers met with Dennis O'Connell, the owner of the company. The officers told him they were conducting an investigation and wanted to speak with Appellant. Mr. O'Connell provided the officers with a place to speak with Appellant and informed them that many of his employees carry weapons.

The officers approached Appellant, identified themselves, and informed him that they wanted to speak with him. Agent King then conducted a pat-

down of Appellant for officer safety. While patting Appellant down, Agent King felt a bulge on Appellant's right hip, which Agent King discovered was a cell phone in a holster. The cell phone was a Samsung, but its model was not readily identifiable. Agent King seized the cell phone and handed it to an assisting officer and then read Appellant his **Miranda**[2] rights.

Appellant agreed to speak with the officers. Agent King told Appellant that they were investigating the dissemination and possession of child pornography that had occurred using the internet at Appellant's apartment. Appellant indicated that he was surprised because only he and Ms. Schmidt had access to the locked WiFi at their apartment. The officers informed Appellant that they had already been to the apartment, spoken with Ms. Schmidt, and discovered no child pornography on her devices.

Appellant denied that he currently used the KIK app and indicated that he was not familiar with the specific account included in the CyberTip. He declined to give consent for the officers to search his cell phone. The interview ended shortly thereafter.

On October 14, 2022, Agent King applied for and received a search warrant for Appellant's cell phone. Agent James McDonald, a senior forensics examiner at the Regional Computer Forensic Lab, extracted the data from the phone on October 20, 2022. He then provided Agent King with a Cellebrite Report, which is a review of all the data extracted from the phone.

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

On October 24, 2022, Agent King analyzed the report, which revealed that there were 364 still images and seven videos of child pornography on Appellant's cell phone. The videos recovered from Appellant's cell phone were not the same as those included in the CyberTip, but they were similar, and each depicted prepubescent girls engaged in sexual acts with adult men. The still images also depicted prepubescent children subjected to sexual contact.

Based on this evidence, and additional data implicating Appellant as the owner and user of both the cell phone and the KIK accounts which transmitted the child pornography images and videos, on November 2, 2022, the OAG charged Appellant with four counts of Sexual Abuse of Children—Dissemination of Child Pornography, 50 counts of Sexual Abuse of Children—Possession of Child Pornography, and one count of Criminal Use of a Communication Facility ("CUCF")[3] for incidents that occurred from May 27, 2022, to October 7, 2022.

Appellant was formally arraigned on March 23, 2023. Appellant did not file any motion to suppress within 30 days of arraignment as required by Pa.R.Crim.P. 579 and 581. The court scheduled trial for February 26, 2024.

On February 23, 2024—eleven months after arraignment and the Friday before Appellant's trial was scheduled to begin—Appellant filed a *nunc pro tunc* motion to accept a motion to suppress. Appellant's counsel, who had entered her appearance approximately five months earlier, claimed that due

_____

[3] 18 Pa.C.S. §§ 6312(c), 6312(d), and 7312(a), respectively.

to personal reasons, despite having had discovery since the prior year, she "was not aware of the grounds for the motion." *Nunc Pro Tunc* Motion, 2/23/24, at paragraphs 8-11. The trial court, finding that Appellant and his counsel had been aware of the search of his cell phone since arraignment and had had ample time to file a motion to suppress, denied the motion as untimely.

Appellant proceeded to a jury trial at which the Commonwealth presented the testimony of, *inter alia*, Agent King and Agent McDonald, who testified in accordance with the above facts. The court admitted into evidence the CyberTip and KIK records, as well as reports of the data from Appellant's cell phone.

Ms. Schmidt testified pursuant to a subpoena issued by Appellant. At an *in camera* conference prior to presenting Ms. Schmidt's testimony, Appellant's counsel explained that she had subpoenaed Ms. Schmidt both as a fact witness in support of Appellant's alternative theory of the case—that Appellant was not home at the time the images were downloaded or transmitted and that Ms. Schmidt was the person who had possessed and transmitted them—and, separately, to attack Ms. Schmidt's credibility. Appellant's counsel explained that she believed Ms. Schmidt had lied at a separate proceeding where she sought entry of a protection from abuse ("PFA") order against Appellant. The trial court precluded Appellant from questioning Ms. Schmidt about whether she made a false statement in the PFA proceeding because counsel did not have the transcript from the PFA

proceeding and because the PFA court had found Ms. Schmidt credible. N.T., 2/27/24, at 16-20.

Ms. Schmidt proceeded to testify that Appellant lived with her in the Easton apartment from July 2021 until January of 2023. She testified that only she and Appellant had their WiFi password and that on May 27, 2022, the day that someone transmitted child pornography via KIK, neither she nor Appellant had shared the WiFI password with anyone. She confirmed that the KIK username reported in the CyberTip was similar to one Appellant used for another social media account. Ms. Schmidt testified that she had not been home on May 27, 2022, and provided Google Maps records showing that she left the apartment that day at 3:53 AM and arrived home at 2:57 PM.[4] She also testified that Appellant was likely at home on that day because it was the Friday before Memorial Day Weekend and he typically had long weekends off from work on holidays.

At the conclusion of the presentation of evidence, the trial court provided numerous instructions to the jury. Relevant to this appeal, the trial court instructed the jury, "There is a verdict slip." N.T., 2/29/24, at 67. The court then stated, "It's a long one. And thank you to the Commonwealth for not charging on all 300 charges. But you do have to answer separate questions for each of the counts." *Id.* Appellant's counsel did not object to the trial

---

[4] The CyberTip reported that the child pornography had been uploaded to KIK on Ms. Schmidt's apartment's internet network between 1:40 PM and 2:33 PM on May 27, 2022.

court's statement or request that the court declare a mistrial as a result of this statement.

The jury convicted Appellant of all charges. The trial court deferred sentencing pending preparation of a presentence investigation ("PSI") report, a psychosexual evaluation, and an evaluation by the Sexual Offenders Assessment Board ("SOAB").[5]

On June 13, 2024, following its consideration of the PSI report, the sentencing guidelines, the arguments of the parties, and Appellant's "complete lack of remorse since being convicted[,]" the court sentenced Appellant to an aggregate term of 81 to 162 years of incarceration, comprised of 55 sentences of 18- to 36-months each—which are standard range sentences—that the court ordered to run consecutively to each other. N.T., 6/13/24, at 23-36. The court also imposed a concurrent sentence of 1 to 12 months of incarceration for the CUCF conviction. *Id.* at 36-37.

In imposing Appellant's sentence, the court specifically noted that the sentence was "consistent with [Appellant's] rehabilitative needs, the protection of the public, and, most importantly, to deter others from committing similar crimes." *Id.* at 24. Further, with respect to the imposition of consecutive sentences, the court explained as follows:

> there were separate victims, separate children, who were victimized in each of these images or videos. And this court is not like Costco or BJ's. You do not get a volume discount. So I think it is wholly appropriate to have your sentence on each of these be

---

[5] Appellant declined to participate in the SOAB evaluation.

- 8 -

consecutive. And I have given this a lot of thought, taking into consideration all of the information that is provided. And I believe this is the best way to ensure that you do not ever victimize another child[.]

*Id.* at 37.

On June 21, 2024, Appellant filed a post-sentence motion in which he claimed, *inter alia*, that the trial court abused its discretion in imposing consecutive sentences for his child pornography convictions because "this sentence, essentially life imprisonment, is unusually harsh and inappropriate as compared to other similar cases with similar defendants." Motion, 6/21/24, at ¶ 8. Appellant also contended for the first time that the trial court should grant him a new trial because, *inter alia*, the statement it made to the jury regarding the Commonwealth not charging Appellant with 300 counts of possessing child pornography prejudiced Appellant. *Id.* at ¶ 16(c).

On July 18, 2024, the trial court entered an order amending Appellant's sentence to include 12 months of reentry supervision for the CUCF conviction. The sentences imposed for the other convictions remained unchanged.

On September 4, 2024, the trial court denied Appellant's post-sentence motion and this timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following six issues on appeal:

A. Was the evidence sufficient to sustain a verdict on the four counts of Distribution of Child Pornography, the fifty counts of Possession of Child Pornography[,] and the single count of [CUCF] such that the denial of [Appellant's] [post-sentence m]otion for [j]udgment of [a]cquittal was proper?

    B. Did the [t]rial [c]ourt abuse its discretion by failing to grant [Appellant's] request for [j]udgment of [a]cquittal based on the argument that the verdict on each of the fifty-five (55) counts was such that would [] "shock the conscience" and[,] therefore[,] should have resulted in [Appellant's] request being granted?

    C. Were the statements by the [t]rial [c]ourt, just prior to dismissing the jury to begin deliberations, influential and[,] thus[,] prejudicial to [Appellant] such that he should have been granted a new trial?

    D. Was the [t]rial [c]ourt's decision to preclude [Appellant] from presenting evidence that would challenge the credibility of Alexandra Schmidt, the main fact witness and potential alternate suspect in the case, an abuse of discretion such that [Appellant] should have been granted a new trial?

    E. Was the [t]rial [c]ourt's refusal to present and argue his, albeit untimely filed, [m]otion to [s]uppress, which challenged the illegal seizure of his cell phone, an abuse of discretion or misinterpretation of the law, such that he should be granted a new trial?

    F. Did the [t]rial [c]ourt abuse her[] "discretionary authority" in imposing a sentence that resulted in "life in prison" for [Appellant], and further did she violate the provisions of the Eighth Amendment to the United States Constitution protecting its citizens against cruel and unusual punishment[] by the aforesaid sentence?

Appellant's Brief at 9-11.

***

In his first issue, Appellant challenges the sufficiency of the evidence in support of convictions of Sexual Abuse of Children—Dissemination of Child Pornography, Sexual Abuse of Children—Possession of Child Pornography, and CUCF. Appellant's Brief at 34-42. In particular, Appellant contends that the Commonwealth did not prove that he acted with the requisite *mens rea* to commit the offenses. *Id.* at 35, 38, 41.

It is axiomatic that the argument portion of an appellate brief must be developed with citation to the record and relevant authority. Pa.R.A.P 2119(a)-(c). "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument." *Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018). This Court will address only those issues properly presented and developed in an appellant's brief as required by our rules of appellate procedure. *See*, *e.g.*, Pa.R.A.P. 2101, 2119. As this Court has made clear, we "will not act as counsel and will not develop arguments on behalf of an appellant." *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived." *Coulter v. Ramsden*, 94 A.3d 1080, 1088 (Pa. Super. 2014); *see also Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (citations omitted) (where "defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived."); Pa.R.A.P. 2101 (providing that where the defects in an appellant's brief are substantial, this Court may quash or dismiss the appeal).

Following our review of the arguments Appellant has presented in support of his claims, we conclude that they are woefully underdeveloped. Appellant has provided no citations whatsoever to any authority regarding

sufficiency of the evidence claims,[6] and has failed to discuss the facts of this case in the context of any relevant case law. Appellant has also failed to provide complete citations to any of the criminal statutes for which he contends the Commonwealth presented insufficient evidence.[7] We cannot and will not act as Appellant's counsel and develop arguments on his behalf. Appellant's failure to develop his arguments has fatally hampered this Court's ability to conduct meaningful appellate review. Thus, we conclude that Appellant has waived his sufficiency claims by failing to develop them.

\*\*\*

In his second issue, Appellant challenges the trial court's denial of his motion for a new trial based on the weight of the evidence. Appellant's Brief at 42-45. Appellant claims that the jury should not have credited the testimony of the Commonwealth's law enforcement witnesses because they "did not thoroughly do their jobs in this case." *Id.* at 44.

We apply the following well-settled standard of review to a challenge to the weight of the evidence: "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and

_____

[6] Appellant cited only to **Commonwealth v. Macolino**, 469 A.2d 132 (Pa. 1983), which pertains to establishing the "possession" element of drug offenses by constructive possession. Appellant's Brief at 41.

[7] We acknowledge that Appellant included in his brief citation to part of 18 Pa.C.S. § 6312(c), Sexual Abuse of Children—Distribution of Child Pornography. Appellant's Brief at 34-35. He did not, however, provide citations to the Sexual Abuse of Children—Possession of Child Pornography or CUCF statutes although he purports to challenge the sufficiency of the evidence in support of those convictions as well.

to determine the credibility of the witnesses." ***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted). "Resolving contradictory testimony and questions of credibility are matters for" the finder of fact. ***Commonwealth v. Hopkins***, 747 A.2d 910, 917 (Pa. Super. 2000). We cannot substitute our judgment for that of the fact-finder. ***Talbert***, 129 A.3d at 546. "A decision regarding the weight of the evidence is within the sound discretion of the trial judge whose decision will not be reversed on appeal absent an abuse of that discretion." ***Commonwealth v. Dougherty***, 679 A.2d 779, 785 (Pa. Super. 1996) (citation omitted).

The trial court explained that it denied Appellant's motion for a new trial based on his claim that the verdicts were against the weight of the evidence because "[n]othing about the verdict in this matter shocked the [c]ourt's conscience or sense of justice." Trial Ct. Op., 9/4/24, at 14. It further found that the jury's verdict "comported with the evidence presented at trial[.]" ***Id.***

Following our review, we discern no abuse in the trial court's determination that the jury's verdict was not against the weight of the evidence. Simply stated, the jury was free to accept the Commonwealth's evidence and reject Appellant's alternate theory of the case. We cannot and will not reweigh and assess the evidence in Appellant's favor as he asks us to do. Because Appellant has failed to show that the trial court's ruling was manifestly unreasonable, or the result of bias, prejudice, partiality, ill-will, or a misapplication of the law, he is not entitled to relief on this claim.

*** 

In his third issue, Appellant contends that the court should have granted his motion for a new trial based on the court's reference in its jury instructions to the number of pornographic photographs found on Appellant's cell phone. Appellant's Brief at 45-49.

Appellate courts will review a jury instruction challenge only where the challenger preserved the issue before the trial court. **Commonwealth v. Pressley**, 887 A.2d 220, 225 (Pa. 2005); **see also** Pa.R.Crim.P. 647(C) (requiring specific objections to jury instructions before the jury retires to deliberate). The purpose of this rule is to "is to allow the court to take corrective measures, and, thereby, to conserve limited judicial resources." **Commonwealth v. Sanchez**, 36 A.3d 24, 42 (Pa. 2011).

Here, as noted above, Appellant did not contemporaneously object to the statement by the court during its jury instructions that he now claims prejudiced him. Accordingly, we find that Appellant has waived this issue for our review.[8]

*** 

---

[8] Even if Appellant had not waived it, we would find that Appellant's claim that the court's statement prejudiced him lacks merit as our review of the notes of testimony indicates that the parties—including Appellant's counsel in her closing argument—repeatedly referenced the presence of more than 300 images of child pornography on Appellant's phone. **See e.g.**, N.T., 2/27/24, at 65, 145; N.T., 2/28/24, at 49, 57; N.T., 2/29/24, at 7, 22-23.

Next, Appellant claims that the trial court erred in precluding him from presenting evidence with which to attack Ms. Schmidt's credibility. In particular, Appellant sought to introduce evidence that he claimed would demonstrate that Ms. Schmidt had committed perjury by lying at an unrelated proceeding at which Ms. Schmidt obtained a PFA order against Appellant. Appellant's Brief at 53. He contends that the court "should have admitted the evidence and let the jury decide what weight to give it[.]" *Id.* at 55-56.[9]

It is axiomatic that the "admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Shelton*, 170 A.3d 549, 552 (Pa. Super. 2017) (citation omitted). We will not find an abuse of discretion unless the "ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Id.* (citation omitted). Where "the trial court indicated the reason for its decision to admit [or preclude the evidence], our scope of review is limited to an examination of the stated reason." *Commonwealth v. Minerd*, 753 A.2d 225, 229 (Pa. 2000).

---

[9] Appellant also avers that, by precluding this evidence, the court denied Appellant his Sixth Amendment right to fully confront his accuser. Appellant's Brief at 56. Appellant does not explain, however, how Ms. Schmidt, who was not a victim of Appellant's crimes, and was a witness whom Appellant himself subpoenaed and presented at trial, was his "accuser" for Sixth Amendment confrontation purposes. We, thus, find that this claim lacks merit.

- 15 -

Pa.R.E. 607 provides that "[t]he credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise prohibited by statute or these rules." Pa.R.E. 607(b). Rule 608 expressly prohibits attacking Ms. Schmidt's credibility in the manner suggested by Appellant. It states, "the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of a witness' conduct[.]" Pa.R.E. 608(b)(1). Rule 609(a) "requires an actual conviction of a crime involving dishonesty or false statement in order for a witness's credibility to be attacked with evidence of the crime." *Commonwealth v. Chmiel*, 889 A.2d 501, 535 (Pa. 2005).

Here, Appellant sought to attack Ms. Schmidt's character for truthfulness with extrinsic evidence concerning a specific instance of her alleged conduct, *i.e.*, a photograph which Appellant contended showed that Ms. Schmidt lied during her testimony in an unrelated PFA matter. As noted above, our Rules of Evidence expressly prohibit admission of evidence of this type for this purpose. Accordingly, the trial court did not abuse its discretion in precluding Appellant from attempting to attack Ms. Schmidt's credibility in this manner.

***

In his fifth issue, Appellant claims the trial court abused its discretion in denying his motion to suppress evidence—which he filed almost a year after his formal arraignment and on the eve of trial—as untimely. Appellant's Brief at 58-63.

Pa.R.Crim.P. 579 requires a defendant, except under limited circumstances not present in the instant case, to file a pretrial motion to suppress within 30 days of his arraignment. Pa.R.Crim.P. 579(A). "[F]ailure to file the motion within the appropriate time limit constitutes a waiver of the right to suppress." Pa.R.Crim.P. 581 cmt. However, the court may still hear an untimely motion to suppress if "the opportunity did not previously exist, or the interests of justice otherwise require." Pa.R.Crim.P. 581(B).

We review a trial court's denial of a motion to suppress as untimely for an abuse of discretion. *Commonwealth v. Westlake*, 295 A.3d 1281, 1286 (Pa. Super. 2023). "In determining whether an exception to [the] time bar from Rule 579(A) is in the interests of justice pursuant to Rule 581(B), the trial court considers the length and cause of the delay, the merits of the suppression claim, and the court's ability, considering the complexity of the issues and the availability of the witnesses, to hold the hearing promptly." *Id.* at 1287 (citation and internal quotation marks omitted).

Here, Appellant filed his motion to suppress on February 23, 2024, eleven months after his formal arraignment and the Friday before his trial was set to begin. The motion was, therefore, patently untimely. Appellant nonetheless argues in his brief that the trial court should have, in the interests of justice, overlooked the motion's untimeliness because: (1) the motion raised meritorious issues which would have compelled suppression of the evidence obtained from Appellant's cell phone; (2) the court could have held a hearing on the motion promptly because the witnesses who would have

provided testimony about the search and seizure of Appellant's cell phone were the same witnesses who were scheduled to appear at his impending trial; and (3) extenuating circumstances prevented counsel from filing the motion timely. Appellant's Brief at 60, 62-63.

The trial court found, in its discretion, that Appellant had failed to show good cause to file an untimely motion to suppress. The court explained as follows:

> In this case, [Appellant] was arraigned on March 23, 2023. He was represented by Attorney Timothy Prendergast at that time. Trial counsel, Attorney Gail Marr, entered her appearance for the Defendant on September 20, 2023. It was not until February 23, 2024—eleven months after [Appellant's] arraignment and five months after trial counsel entered her appearance—that the motion to suppress was filed, on the eve of trial. At no time prior to February 23, 2024[,] did counsel seek to file any omnibus pretrial motion, timely or untimely. In a conference on the morning of trial, counsel attempted to explain her failure to file the motion at any prior time by citing personal issues that had arisen between November 2023 and January 2024. Counsel did not allege that she did not receive timely discovery, that she had no prior opportunity to file the motion, or that she and [Appellant] were not aware of the grounds for the motion prior to the eve of trial. Certainly, any competent counsel would be aware long before trial of the fact that a motion to suppress may be prudent when the evidence against her client largely consists of evidence found during a search.

Trial Ct. Op. at 8.

Following our review, we conclude that the trial court did not abuse its discretion. We observe that, critically, even though counsel "recognized that the [c]ourt had discretion, under Rule 579, to expand the time for filing" a motion to suppress, she admitted that she "did not immediately obtain, or

review, discovery on the case, because it was scheduled months in the future, and the date for filing [p]retrial [m]otions had passed." Appellant's Brief at 58, 60. In other words, counsel's explanation makes clear that she had the opportunity to review the evidence and determine any claims she wished to raise but chose not to do so in a timely manner. Furthermore, the record reflects that, by the time Appellant filed his motion, the court had already continued the trial date twice at Appellant's request. To hold a hearing on an untimely motion that Appellant could have timely filed would have required the court to delay the commencement of trial for a third time. We conclude, therefore, that the trial court did not abuse its discretion in denying the motion as untimely because Appellant and counsel had ample opportunity to know of the grounds for the motion long before counsel filed it and Appellant's own lack of diligence would have further delayed the administration of justice. This claim, thus, fails.

\*\*\*

In his final issue, Appellant challenges the discretionary aspects of his sentence. Challenges to the discretionary aspects of a sentence "are not appealable as of right." ***Commonwealth v. Leatherby***, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) preserving the issue at sentencing or in a motion to reconsider the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires "a separate section of the brief [setting forth] a concise statement of the reasons relied upon for allowance of appeal with respect to

the discretionary aspects of a sentence[;]" and (4) presenting a substantial question pursuant to 42 Pa.C.S. § 9781(b). *Id.*; Pa.R.A.P. 2119(f).

The record reflects that Appellant satisfied the first three requirements. Accordingly, we consider whether he has presented a substantial question. "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation and internal quotation marks omitted).

Appellant claims that the trial court abused its discretion when it ordered the sentences imposed for 54 of his convictions to run consecutively, resulting in a "life sentence" of 81 to 162 years of incarceration. Appellant's Brief at 26-33.

While generally, the imposition of consecutive sentences does not present a substantial question—even when it results in a "*de facto*" life sentence—this Court has recognized that the imposition of consecutive sentences can raise a substantial question. *Commonwealth v. Austin*, 66 A.3d 798, 808 (2013) "[T]he key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears on its face to be, an excessive level in light of the criminal conduct at issue in the case." *Id.* (where this Court found that the appellant, who a jury convicted of 96 separate offenses for sexual

abuse of children, had not presented a substantial question when he claimed that the imposition of consecutive sentences resulted in a "*de facto* life sentence") (citation omitted); *see also **Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa. Super. 2011) (rejecting the appellant's claim that the trial court's imposition of an aggregate sentence of 633 years to 1500 years in prison for his conviction of 314 counts of sexual abuse raised a substantial question).

Here, as in ***Austin*** and ***Prisk***, the imposition of consecutive sentences does not result in a sentence that is "grossly disparate to Appellant's conduct or . . . viscerally appear[s] as patently unreasonable" in light of the gravity of Appellant's criminal conduct, which resulted in his conviction of 54 counts of either possessing or distribution child pornography. ***Austin***, 66 A.3d at 809 (citation omitted). Appellant has, therefore, not raised a substantial question. We, thus, lack jurisdiction to review Appellant's challenge to the discretionary aspects of his sentence.[10]

In sum, having found each of Appellant's issues meritless or waived, we affirm his judgment of sentence.

_____

[10] To the extent that Appellant also challenges his sentence on constitutional grounds, we find this claim waived as our review indicates that Appellant did not include it in his Rule 1925(b) statement and, instead, raised it for the first time in his appellate brief. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/18/2025