J-S43004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| --- | --- | --- |
| v. | : | |
| CLAUDEO ALEXANDER FUENTEZ-SOTO | : | |
| | : | No. 1199 EDA 2025 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered April 3, 2025
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0007203-2023

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| --- | --- | --- |
| v. | : | |
| CLAUDEO ALEXANDER FUENTEZ-SOTO | : | |
| | : | No. 1415 EDA 2025 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered April 3, 2025
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0002112-2024

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY KUNSELMAN, J.: **FILED FEBRUARY 12, 2026**

Claudeo Fuentez-Soto appeals from the judgment of sentence imposed after he pled guilty to seven counts of burglary in two separate cases.[1] He challenges the discretionary aspects of his sentences. Upon review, we affirm.

---

[1] 18 Pa.C.S.A. § 3502(a)(2).

On December 9, 2023, around 6:30 p.m., officers were dispatched to a home in the Bryn Mawr area of Lower Merion Township, Montgomery County, Pennsylvania. A homeowner, who was not home at the time, reported that he saw, on his security cameras, three masked men walking around the outside of his residence and pointing at the cameras. The homeowner then saw the men enter his home. As the men moved from room to room, they set off additional motion sensors, which the homeowner reported.

When the officers arrived at the home, they saw a vehicle at the front of the property. The vehicle began to drive away but the officers stopped it nearby. The police identified the driver as Fuentez-Soto. He told them there were three others in the house, but the police found no one there. They took Fuentez-Soto into custody.

The police found shattered glass from a door at the back of the home. The homeowner discovered that several valuable items were missing.

The police interviewed Fuentez-Soto. He told them that he lived in Orlando, Florida. He received $5,000 for his involvement, which he needed to support his girlfriend and the baby they were expecting. He explained that, two days earlier, on December 7, 2023, two of the accomplices picked him up at his house in Florida late at night and drove to Detroit, Michigan. There, they picked up another accomplice.

After driving to Wilmington, Delaware and spending the night, Fuentez-Soto and the three accomplices drove to the Bryn Mawr area to look for affluent homes where no one was home; they targeted the subject home. As

in previous burglaries, Fuentez-Soto was the driver and lookout.  He dropped the three accomplices off at the house and parked out front.   When Fuentez-Soto saw the police pulling up, he alerted his accomplices and tried to drive off but was stopped by police.

After his interview, Fuentez-Soto turned over his cell phone to the police and consented to a search of it.  Fuentez-Soto was arrested and charged with multiple offenses in Case No. 7203-2023 for this burglary.

Following Fuentez-Soto's arrest in that case, ongoing investigations (due to a rash of burglaries in Montgomery and surrounding counties) and additional investigative efforts, in part stemming from the search of his cell phone, Fuentez-Soto was linked to six other residential burglaries.  These burglaries took place in Chester, Delaware, and Montgomery Counties during October 2023.  Fuentez-Soto was arrested and charged in Case No. 2112-24 for these burglaries.  The two cases were later consolidated.

In all these burglaries, Fuentez-Soto and his accomplices broke into the victims' homes and destroyed their properties.  They stole jewelry and other personal property worth over $387,000.00.  They also caused more than $40,000.00 in damage to these properties.  Additionally, Fuentez-Soto and his accomplices inflicted significant fear and terror in the victims by violating the sanctity of their homes.

On November 18, 2024, Fuentez-Soto pled guilty in both cases to seven counts of first-degree felony burglary.  The parties agreed that his maximum sentence would be capped at 10 to 20 years' incarceration.

On April 3, 2025, the trial court sentenced Fuentez-Soto to an aggregate sentence for both cases of 98 months (8 years) to 228 months (19 years).[2] Fuentez-Soto filed a post-sentence motion, which the court denied.

Fuentez-Soto filed this timely appeal. He and the trial court complied with Appellate Rule 1925.

On appeal, Fuentez-Soto raises the following single issue for our review:

Whether [Fuentez-Soto's] sentencing hearing did not follow the Sentencing Code, sentencing norms and whether the sentence was manifestly unreasonable and excessive where the [t]rial [c]ourt did not adequately consider [Fuentez-Soto's] lack of a prior criminal record, cooperation with law enforcement, economic hardship, likelihood of deportation and having a young child at home with his partner.

Fuentez-Soto's Brief at 4.

Fuentez-Soto challenges the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Instead, to reach the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine:

(1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]pellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in

---

[2] Fuentez-Soto's aggregate sentence was comprised as follows: on count 2 of Case No. 7203-2023, the trial court sentenced him to 14 to 30 months' incarceration; in Case No. 2112-2024, the court sentenced him to 14 to 30 months each on counts 1 through 5, and fourteen (14) to forty-eight (48) months on count 6, all consecutive to one another and to the sentence imposed on Case No. 7203-2023.

accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Colon*, 102 A.3d 1033, 1042-43 (Pa. Super. 2014) (quoting *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013)). Fuentez-Soto satisfied the first three requirements under *Colon*. Accordingly, we must determine whether he raises a substantial question.

In his Rule 2119(f) statement, Fuentez-Soto claims that his sentence was contrary to the Sentencing Code and norms. Specifically, he argues that his sentence was manifestly excessive because the trial court failed to consider various mitigating factors.[3] Fuentez-Soto's Brief at 19.

This Court has held that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*). Therefore, we will address the merits of Fuentez-Soto's sentencing claim.

Our standard of review of a sentencing claim is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

_____

[3] This is a generous interpretation of Fuentez-Soto's claim.

- 5 -

judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006). Where there is an abuse of discretion, the sentence must be vacated. *See Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007). In conducting this review, we must affirm a sentence where "the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2).

The Sentencing Code requires that when sentencing a defendant, the trial court must first consider the sentencing guidelines. 42 Pa.C.S.A. § 9721(b). The court also must consider "the protection of the public, the gravity of the offense in relation to its impact on the victim and the community, and the rehabilitative needs of the defendant." *Id.* Finally, before imposing a sentence of total confinement, the court must consider "the nature and circumstances of the crime[,] and the history, character, and condition of the defendant." 42 Pa.C.S.A. § 9725. The appellate court gives great deference to the trial court's sentencing decision. *See Walls*, 926 A.2d at 961.

In his sole issue, Fuentez-Soto claims that the trial court failed to follow the Sentencing Code and norms and imposed a manifestly unreasonable and excessive sentence. Specifically, he argues that the court "failed to adequately consider" Fuentez-Soto's lack of a prior criminal record,

cooperation with law enforcement, economic hardship at the time of the offense, likelihood of deportation, and his family life. Fuentez-Soto maintains that, although the trial court sentenced him below the agreed upon cap, a mitigated sentence would have been more appropriate given these factors. Therefore, according to Fuentez Soto, this Court should vacate the judgment of sentence and remand for resentencing. Fuentez-Soto's Brief at 21-22. We disagree.

Initially, our review of the sentencing transcript reveals that, in fashioning Fuentez-Soto's sentence, the trial court was aware of and considered the sentencing guidelines. N.T., 4/3/25, at 4. Fuentez-Soto's prior record score was zero and the offense gravity score for burglary was 7. The standard range, minimum sentence under the guidelines was 6 to 14 months' incarceration. Further, each felony burglary carried a statutory maximum sentence of 10 to 20 years.

Here, the trial court sentenced Fuentez-Soto to a minimum sentence of 14 months' incarceration for each offense, which, notably, was within the standard range, albeit at the top end. Sentences imposed within the standard range of the sentencing guidelines are presumed to be reasonable. **Commonwealth v. Ventura**, 975 A.2d 1128, 1134 (Pa. Super. 2009). Furthermore, Fuentez-Soto's maximum sentence was less than the cap agreed upon by the parties and well under the maximum he could have received for seven burglaries.

Additionally, we observe that, in sentencing Fuentez-Soto, the trial court had a presentence investigation ("PSI") report, which it reviewed and noted on the record. N.T., 4/3/25, at 4. Where a sentencing court is informed by a PSI, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Ventura*, 975 A.2d at 1135.

Nonetheless, Fuentez-Soto's counsel highlighted several mitigating factors for the trial court. These included: Fuentez-Soto's young age, lack of criminal history, remorse and accountability for his actions, cooperation with authorities at all stages of the process, and his family life. The court also heard from Fuentez-Soto, who explained he needed money for his family when he committed these burglaries and apologized for his actions.

Before sentencing Fuentez-Soto, the trial court explained on the record the factors it considered and the reasons for its sentence. N.T., 4/3/25, at 29. The court specifically noted that it considered the mitigating factors of Fuentez-Soto's cooperation with the authorities and his guilty plea, as well as his age. *Id.* at 30. However, in the trial court's opinion, the aggravating factors outweighed the mitigating factors, which justified the sentence it imposed. The court explained:

> There were multiple convictions. And again, each conviction stands for an individual victim or victims as they are defined as a family, as those who reside in a home, those whose memories were made in a home, those whose goods were stolen as a target of these burglaries. They were not just material things. They had meaning as each of the victim impact statements [indicated].

N.T., 4/3/25, at 30-31.

The trial court also observed that Fuentez-Soto's crimes differed from instances where a burglar would break into someone's house, take something in particular, and leave. Here, instead, Fuentez-Soto and his accomplices damaged and ransacked the victims' homes looking for anything they could steal. The court found this was "more serious, more onerous. The way in which they treated[,] not by taking the property, the things that were important to each individual, but the way they treated their home . . . . That makes [Fuentez-Soto] a clear and present danger." *Id.* at 31. It noted that "[t]hese crimes involve[d] substantial loss of property and damage." *Id.*

The court further explained:

[Considering] the protection of the public, it starts with individuals. It starts with individuals living on the street. It starts with individuals who live on a street that's within a community . . . [W]hen you violate somebody's home, you violate the community. You violate the safety. You violate the sanctity, the security and the protection of a community when you violate someone's home and steal their property and ransack their property.

The gravity of the offense as it relates [to] the impact of the life of the victim is clear. It was said in so many different ways. Different families said the same thing. They don't feel safe. They don't feel secure. Their memories were tainted, affected, stolen from them. Generations of children don't feel comfortable in a home because of what may have happened to their grandparents or parents. [Fuentez-Soto] along with the individuals that were never apprehended knew exactly what they were doing. They simply didn't care.

Looking at [the] undue risk of whether [Fuentez-Soto] would commit another crime, this is the [c]ourt's opinion based upon the way this defendant was apprehended and then the excellent investigation of the Lower Merion Police Department to draw

- 9 -

together all of the other communities and states involved that he would have committed another crime. There's an undue risk because the only thing that stopped him was his arrest.

Whether [Fuentez-Soto] is in need of correctional treatment, that's implicit [] in [] the guidelines I've already cited . . . .

And then the concept of a lesser sentence depreciates the seriousness of the crime. The [c]ourt has made it clear in this sentence that each crime they committed was a separate crime. Each crime when committed they would consider whether to commit the next crime, move to the next house, to the next community and commit those types of crimes. So any lesser sentence would depreciate the seriousness of each of the individual crimes in this matter.

*Id.* at 27, 31-33. Taking into consideration the circumstances surrounding these burglaries, the trial court indicated that any other sentence would be inappropriate. *Id.* at 31.

Based upon our review of this case, and the sentencing transcript, we conclude that the trial court considered *all* the relevant sentencing factors. On appeal, "[w]e cannot re-weigh the sentencing factors and impose our judgment in place of the sentencing court." ***Commonwealth v. Macias***, 968 A.2d 773, 778 (Pa. Super. 2009). Therefore, we discern no abuse of discretion in the trial court's sentence for Fuentez-Soto's crimes. Fuentez-Soto's sentencing claim merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/12/2026